[No. 54794-1-I.   Division One.   July 18, 2005.]

*In the Matter of the Parentage of* M.S. KEVIN HAMPSON, *Appellant*, v. SHAWN M. SNELL ET AL., *Respondents.*

*Paige D. Haley* (of *Lutz Law Office, P.S.*) and *Charles K. Wiggins, Kenneth W. Masters*, and *Shelby R. Frost Lemmel* (of *Wiggins & Masters, P.L.L.C.*), for appellant.

*Jerome C. Scowcroft*; and *Margaret D. Fitzpatrick* (of *Michael W. Bugni & Associates*), for respondents.

¶1 Agid, J. — Kevin Hampson filed a petition to establish the parentage of MS, his former paramour's daughter. The trial court dismissed the petition, finding it untimely under a recently-enacted limitations period found in RCW 26.26.530, and Hampson appeals. We conclude that because MS was born while her mother was married to another man and that man was ordered to pay child support to MS when the two divorced, MS has an adjudicated father. Therefore the applicable statute of limitations is governed by RCW 26.26.540, and the petition was timely under that statute. Alternatively, the petition was timely under RCW 26.26.-530 because the limitations period did not begin to run until the statute was enacted. We reverse and remand for further proceedings.

## FACTS

¶2 David and Shawn Snell were married in 1989. Beginning in 1995, Shawn had a sexual relationship with Kevin Hampson, a married man who lived next door to the Snells. In April 1997, David and Shawn had a son, JS.[1] In September 1999, Shawn became pregnant again and told Hampson that he may be the biological father. On June 8, 2000, MS was born. MS lived with and was raised by David and Shawn.

¶3 In February 2002, Shawn filed for divorce. In September of that year, Hampson and Shawn became engaged; and in December, the two moved in together. The relationship quickly became strained, and they separated one month later. In January 2003, David found out about Shawn's affair with Hampson and learned that he may not be MS's biological father. In February 2003, Hampson filed a peti-

---

[1] The parties agree that JS is David's biological son.

tion to establish the parentage of MS. But one month later, Hampson and Shawn reconciled, and Hampson voluntarily dismissed the petition.[2] In April 2003, the Snells' divorce became final, with the divorce decree naming Shawn primary custodian of JS and MS, granting David substantial visitation rights, and ordering David to pay child support. In July 2003, Hampson's divorce became final.

¶4 Between May 2003 and January 2004, Hampson and Shawn took JS and MS on vacations to Reno, Washington D.C., Disneyland, and Mexico. At least one of these vacations involved spending time with Hampson's parents, brother, and nephews. On other occasions, Hampson's family traveled to Seattle to spend time with Hampson, Shawn, JS, and MS. In April 2004, Hampson and Shawn again moved in together. But, three weeks later, they again separated. Hampson has not had contact with MS since May 2004.

¶5 On May 28, 2004, Hampson filed this petition to again establish MS's parentage. Both Shawn and David oppose the petition, alleging that Hampson is an alcoholic, has been violent with Shawn, and has frequently stalked Shawn and the children.[3] Shawn says that she fears for her and her children's safety.

¶6 In June 2004, Shawn and David moved to dismiss Hampson's petition, arguing it was barred by the statute of limitations. A court commissioner granted the motion, finding that the petition was time-barred under RCW 26.26.530. A superior court judge agreed and denied Hampson's motion to revise the commissioner's order. Hampson appeals.

---

[2] The petition was dismissed without prejudice.

[3] Hampson vigorously disputes these allegations.

## DISCUSSION

### I. *Hampson's Parentage Petition and Statutes of Limitations*

¶7 Hampson first argues that the trial court erred by dismissing his petition as time barred. We review a trial court's decision to dismiss a case on statute of limitations grounds de novo.[4] Despite the grounds on which Shawn and David brought their motion, the parties did not focus on the statute of limitations in the trial court. Instead they primarily argued about whether Hampson had a common law claim that might be exempt from the limitations period. While we typically do not address issues raised for the first time on appeal,[5] we will address new issues that affect a party's ability to maintain a cause of action.[6]

### A. *RCW 26.26.540*

¶8 We must first determine which of two statutes of limitations in Washington's Uniform Parentage Act (UPA)[7] applies in this case. RCW 26.26.530 provides that an action to adjudicate the parentage of a child having a *presumed* father must be commenced within two years of the child's birth.[8] The trial court dismissed Hampson's petition under this statute. RCW 26.26.540 states that an action to adjudicate the parentage of a child having an *acknowledged* or *adjudicated* father must be commenced within two years of the acknowledgment or adjudication.[9] In order to determine which statute applies, we must first

---

[4] *Ellis v. Barto*, 82 Wn. App. 454, 457, 918 P.2d 540 (1996) (citing *Syrovy v. Alpine Res., Inc.*, 122 Wn.2d 544, 548 n.3, 859 P.2d 51 (1993)), *review denied*, 130 Wn.2d 1026 (1997).

[5] RAP 2.5(a)(2).

[6] *Jones v. Stebbins*, 122 Wn.2d 471, 479, 860 P.2d 1009 (1993) (citing *New Meadows Holding Co. v. Wash. Water Power Co.*, 102 Wn.2d 495, 498, 687 P.2d 212 (1984)).

[7] Chapter 26.26 RCW.

[8] RCW 26.26.530(1).

[9] RCW 26.26.540(2).

determine whether David Snell is a presumed, acknowledged, or adjudicated father.

¶9 A presumed father is "a man who, under RCW 26.26.116, is recognized to be the father of a child until that status is rebutted or confirmed in a judicial proceeding."[10] Under RCW 26.26.116(1)(a), a man is presumed to be a child's father if he and the child's mother are married to each other, and the child is born during the marriage. An acknowledged father is a man who has established a father-child relationship with the child by signing and executing an acknowledgment of paternity.[11] And an adjudicated father is "a man who has been adjudicated by a court of competent jurisdiction to be the father of a child."[12] David is not an acknowledged father, but would be MS's presumed father, since MS was born while Shawn and David were married. But under RCW 26.26.630(3)(b), a man becomes an adjudicated father if he is involved in a marital dissolution proceeding and the court's final order provides that he must support the child. When David and Shawn got divorced, the court ordered David to pay child support for MS. Therefore, David is now MS's adjudicated father.

¶10 The Snells argue that because MS was born during their marriage, David is a presumed father, thus requiring Hampson to file his parentage petition within two years of MS's birth under RCW 26.26.530. But an adjudication under RCW 26.26.630 rebuts a presumption of paternity,[13] and therefore David is clearly an adjudicated father.[14] The Snells contend that David's status as a presumed father

---

[10] RCW 26.26.011(15).

[11] RCW 26.26.011(1), .300-.375.

[12] RCW 26.26.011(2).

[13] RCW 26.26.116(2).

[14] The Snells argue that RCW 26.26.630 exists not to justify changing a father's status from presumed to adjudicated for the purpose of reviving an expired statute of limitations, but rather to "define the imposition of a support obligation as a triggering event to start the statute of limitations in section 540 *for the person ordered to pay support.*" Not only does this argument unnecessarily confuse the issue, but it also ignores the section's official comment, which states that the

cannot be rebutted because no admissible genetic testing results have been introduced. They rely on RCW 26.26.600, which provides that the paternity of a child having a presumed father may be rebutted only by admissible results of genetic testing that exclude that man as the father of the child. But the Snells misinterpret the statute. It states, "The paternity of a child having a presumed, acknowledged, or adjudicated father may be disproved only by admissible results of genetic testing . . . ."[15] This statute "establishes the controlling supremacy of admissible genetic test results in the adjudication of paternity."[16] It does not preclude adjudication as a means of rebutting the presumption of paternity. RCW 26.26.600(1) does not trump RCW 26.26.630(3)(b)'s clear statement that parentage is "adjudicated" if a court requires a man, through dissolution proceedings, to provide child support. Nor does it defeat RCW 26.26.116(2)'s clear statement that a presumption of paternity may be rebutted by an adjudication. To interpret the statutes as the Snells argue would be to render both superfluous, which we cannot do.[17]

¶11 We conclude that David Snell is an adjudicated father, and therefore RCW 26.26.540 establishes the applicable limitations period for Hampson's petition. Under that statute, Hampson's petition must have been filed within two years of the effective date of the adjudication. The Snell divorce became final in April 2003, and Hampson filed his petition in May 2004. The petition was timely filed.

---

subsection "resolves whether a divorce decree constitutes a finding of paternity. This subsection provides that a decree is a determination of paternity if the decree states that the child was born of the marriage or grants the husband visitation or custody, or orders support. This is the majority rule in American jurisprudence." Comment, Uniform Parentage Act § 637 (2000).

[15] RCW 26.26.600(1).

[16] Uniform Parentage Act § 631 cmt. (2000).

[17] *See Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003) (when construing a statute, a court should not render any portion meaningless or superfluous) (citing *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)).

## B. *RCW 26.26.530*

■■ ¶12 Even if David were a presumed father so that RCW 26.26.530 applied, Hampson's claim was still timely.[18] RCW 26.26.530 became effective on June 13, 2002.[19] Before that date, there was no time limit for filing a parentage petition.[20] It is well established that when the legislature enacts a shortened statute of limitations, the time for bringing claims that accrued before the new law's enactment begins to run on the new statute's effective date.[21] Hampson's claim began accruing on June 8, 2000, when MS was born. If the court were to apply RCW 26.26.530 to Hampson's claim, the claim would have expired on June 8, 2002, *before the statute of limitations even took effect.* But the new limitations period did not begin to run until June 13, 2002, the statute's effective date, and Hampson had until June 13, 2004, to file his petition. Because he filed his petition in May 2004, it would not have been barred by the statute of limitations.[22]

---

[18] We note that when Hampson filed his first petition, the Snells' divorce had not yet been adjudicated. Therefore, at that time, RCW 26.26.530 would have been the applicable statute of limitations. We presume this is why the parties did not focus on RCW 26.26.540 in the trial court.

[19] RCW 26.26.904.

[20] Former RCW 26.26.060(1)(a) (2000) (an action may be brought "at any time for the purpose of declaring the existence or nonexistence of the father and child relationship"), *repealed by* Laws of 2002, ch. 302, § 711.

[21] *See Merrigan v. Epstein*, 112 Wn.2d 709, 717, 773 P.2d 78 (1989) (citing *O'Donoghue v. State*, 66 Wn.2d 787, 791-92, 405 P.2d 258 (1965); *Earle v. Froedtert Grain & Malting Co.*, 197 Wash. 341, 344-45, 85 P.2d 264 (1938); *Hanford v. King County*, 112 Wash. 659, 661, 192 P. 1013 (1920); *King County Boundary Review Bd. v. City of Auburn*, 45 Wn. App. 363, 366-67, 725 P.2d 451 (1986); *Torkelson v. Roerich*, 24 Wn. App. 877, 879-80, 604 P.2d 1310 (1979)). *See also 1000 Va. Ltd. P'ship v. Vertecs Corp.*, 127 Wn. App. 899, 912 n.30, 112 P.3d 1276 (2005) (citing *O'Donoghue*, 66 Wn.2d at 790; *Lane v. Dep't of Labor & Indus.*, 21 Wn.2d 420, 423, 151 P.2d 440 (1944)); *State v. Keough*, 94 Wn. App. 286, 291, 971 P.2d 121 (citing *Merrigan*, 112 Wn.2d 709), *aff'd*, 139 Wn.2d 320, 987 P.2d 63 (1999).

[22] The Snells argue that to hold that Hampson's claim is not time-barred under RCW 26.26.530 would be to ignore the plain language of RCW 26.26.904, which states that "[a] proceeding to adjudicate parentage which was commenced before June 13, 2002, is governed by the law in effect at the time the proceeding was commenced." According to the Snells, the limitations period of RCW 26.26.530 must apply because Hampson filed his petition after June 13, 2002. But RCW 26.26.904 is designed to establish the effective date of the new statute of

## II. *Hampson's Common Law Claim*

¶13 Hampson next argues that he had a common law right to petition for parentage as a de facto or psychological parent and that the trial court erred by dismissing his petition without ruling on his common law claim. We need not reach this argument, as Hampson has a viable claim under the UPA.[23]

¶14 Hampson also challenges the trial court's unwillingness to order a DNA (deoxyribonucleic acid) test or appoint a guardian ad litem to represent MS's interests, and argues that the court's failure to do these things violated his fundamental rights and MS's constitutionally protected interest in an accurate paternity adjudication. But because the trial court dismissed Hampson's petition on statute of limitations grounds, it was not required to order a DNA test or appoint a guardian ad litem. On remand, the trial court will take the steps necessary to adjudicate the merits of Hampson's parentage petition.

## III. *Alternate Grounds for Affirming the Trial Court*

¶15 The Snells encourage us to consider Shawn's wishes and presume that she is acting in MS's best interests by opposing Hampson's petition. But that is not at issue here. The only issue presented to us is whether the trial court erred by dismissing Hampson's petition on statute of limitations grounds. The mother's wishes and the child's best interests should be considered in conjunction with the merits of the petition and the remedy, if any.

¶16 The Snells also argue that Hampson's action is barred because the commissioner determined that Hampson does not qualify as a de facto or psychological parent. But this assertion misrepresents the record. During

---

limitations. It does not dictate which of two statutes of limitations applies in an action that began to accrue before the new limitations period was enacted.

[23] *See In re Parentage of L.B.*, 121 Wn. App. 460, 476 n.2, 89 P.3d 271 (a common law remedy survives a statutory remedy only if the legislature has not expressed its intention to preempt the common law remedy and if the common law remedy fills a void in the law), *review granted*, 152 Wn.2d 1013, 101 P.3d 107 (2004).

the arguments in the lower court, the commissioner inquired about whether MS ever lived with Hampson or whether Hampson ever paid child support, and the attorneys and parties answered these questions briefly. The commissioner then stated that Hampson's common law claim differed from the cited case law because he did not financially support MS, nor did MS ever live with him. But she declined to rule on the issue, stating "So I think the cases are clearly distinguishable, and I think the statute controls. But I will wait for the Supreme Court to make a decision on that, and I'm going to dismiss the action with prejudice." In her findings of fact and conclusions of law, the Commissioner dismissed the case only on statute of limitations grounds. And the superior court affirmed the dismissal, again solely on the statute of limitations issue. Thus, while the commissioner may have opined that Hampson's common law claim would fail, the commissioner never made a finding that Hampson failed to qualify as a de facto or psychological parent.

¶17 The Snells argue that Hampson waived whatever interest he may have had in his action by waiting too long to establish a relationship with MS. They also ask us to affirm the trial court on the basis that if genetic testing were to take place and indicate that Hampson was the father, certain presumptions would outweigh the presumption of parentage created by genetic testing. But these arguments are premature and would require us to find facts and make a decision on the merits. We can do neither as this is the province of the trial court.

¶18 We reverse and remand for further proceedings and deny the Snells' request for attorney fees on appeal.

ELLINGTON, A.C.J., and SCHINDLER, J., concur.

Reconsideration denied September 1, 2005.