247 P.3d 491 (2011)
In re the Parentage of K.R.P. (DOB: 09/05/95) and K.H.R.P. (DOB: 05/17/98), Minor Children,
Mark Kjolhaug, Appellant, and
Tamy Pawlak, Respondent,
Timothy Pawlak, Respondent.
No. 63774-6-I.
Court of Appeals of Washington, Division 1.
February 22, 2011.
*493 Ted D. Billbe, Law Office of Ted D. Billbe, Deborah Anne Bianco, Deborah A. Bianco PS, Bellevue, WA, Michael Barr King, Carney Badley Spellman PS, Leonard W. Juhnke, Attorney at Law, Seattle, WA, for Appellant.
Paul Frederick Seligmann, Attorney at Law, Valerie A. Villacin, Catherine Wright Smith, Smith Goodfriend PS, Seattle, WA, for Respondent.
Pam Edgar, Seattle, WA, Appearing Pro Se, for Guardian Ad Litem.
COX, J.
¶ 1 The primary issue in this appeal is whether the trial court correctly denied a properly supported motion for genetic testing in this action to establish parentage. Washington's Uniform Parentage Act ("UPA"), RCW 26.26.405, mandates genetic testing of children and other designated individuals, subject to limited exceptions. On this record, none of those exceptions apply. Accordingly, the trial court improperly denied the motion of Mark Kjolhaug, the petitioner in this action. We reverse and remand with instructions.[1]
¶ 2 Tamara ("Tamy") and Timothy ("Tim") Pawlak married in 1983.[2] Between 1983 and 1986, they had two children together. Following the birth of their second child, Tamy and Tim decided not to have any more children and Tim obtained a vasectomy.
¶ 3 In 1993, following the family's move to Minnesota, Tamy met Mark Kjolhaug ("Mark"). She told Mark that she was divorced from Tim, and the two began an intimate relationship. Tamy told Tim that her relationship with Mark was platonic.
¶ 4 In January 1995, Tamy became pregnant. Tamy led both Tim and Mark to believe that he was the father. K.R.P. was born in September 1995.
¶ 5 Tamy became pregnant again in August 1997. Again, she led both Tim and Mark to believe that he was the father. K.H.R.P. was born in May 1998.
¶ 6 Tim is listed as the father on the birth certificates of K.R.P. and K.H.R.P.
¶ 7 From the birth of each child, both Tim and Mark have played significant roles in the lives of both children. There was testimony at trial that the children call both men "dad."
¶ 8 In 2001, the Pawlaks relocated to Seattle. After the move, Mark traveled to Seattle frequently to visit Tamy, K.R.P., and K.H.R.P. In late 2003 or early 2004, Tim became suspicious of the nature of Tamy and Mark's relationship. He also began to question the children's paternity.
¶ 9 In 2005, Tim petitioned for dissolution of his marriage to Tamy. It appears that no mention of Mark arose in that proceeding. In June 2006, the superior court entered a decree of dissolution, an order approving and adopting a parenting plan, and a child support order. Tim was designated as the obligor parent in the child support order.
¶ 10 In November 2007, Mark commenced this action to establish his parentage of the *494 two minor children. The petition included a request for genetic testing. The court appointed a guardian ad litem (GAL) for K.R.P. and K.H.R.P. Among the court's directives to the GAL was to recommend "whether a DNA test should be ordered, and [to] represent the children's best interests." The GAL recommended against genetic testing, concluding that it would not be in the children's best interest.
¶ 11 Following the GAL's recommendation against genetic testing, both Mark and Tamy separately moved, pursuant to RCW 26.26.405, for an order requiring genetic testing. Mark's motion was supported by a declaration alleging paternity and claiming the requisite sexual contact with Tamy, as required by the statute. Tamy's motion was consistent with and supplemented Mark's motion.
¶ 12 A court commissioner denied both motions. With respect to Mark's motion, the commissioner concluded that genetic testing would not be in the children's best interest. With respect to Tamy's motion, the commissioner concluded that RCW 26.26.630(1)(b) barred Tamy from challenging paternity as established through the June 2006 decree of dissolution.[3]
¶ 13 Mark moved to revise the commissioner's order, arguing that genetic testing was required. The trial court denied the motion, deciding that such testing was not in the best interest of the children.
¶ 14 The case proceeded to trial to determine a parenting plan and to also determine what financial responsibilities the parties would have for the two minor children. At the beginning of the proceeding, the parties stipulated on the record that Mark met the criteria for a "de facto" parent. Following trial, the court entered its findings of fact and conclusions of law together with its judgment and order on the petition for establishment of parentage. The court denied Mark's petition. But, the court entered a parenting plan allocating residential time among Mark, Tamy, and Tim. The court also entered a child support order requiring "Mark Kjolhaug as a defacto parent and Timothy Pawlak as the adjudicated father" to pay child support.
¶ 15 Mark and Tamy appeal.

GENETIC TESTING
¶ 16 Mark and Tamy argue that the trial court erred in denying genetic testing. Mark claims that RCW 26.26.405 is dispositive in that it mandates testing under the circumstances of this case. We agree.
¶ 17 We first address a threshold issue. Mark and Tamy both appeal the trial court's denial of their respective motions for genetic testing. But Tamy fails to argue why she is not barred from challenging paternity, as the court commissioner determined below. Because of this failure and the fact that the focus of the briefing is on the denial of Mark's motion, our analysis also focuses on the denial of his motion.

Legislative Intent
¶ 18 The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent and purpose.[4] "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent."[5] The plain meaning of a statute is derived from all the legislature has said in the statute and related statutes that disclose legislative intent about the provision in question.[6]
¶ 19 Statutory interpretation is a legal issue that this court reviews de novo.[7]
*495 ¶ 20 Chapter 26.26 RCW, Washington's UPA, was modified in 2002.[8] The revisions repealed and replaced provisions based on the Uniform Law Commission's Uniform Parentage Act of 1973 with provisions based on the revised Uniform Parentage Act of 2000.[9]
¶ 21 The primary question on appeal is whether the trial court properly denied Mark's motion for genetic testing. His motion was based on RCW 26.26.405, which provides:
(1) Except as otherwise provided in this section and RCW 26.26.410 through 26.26.630, the court shall order the child and other designated individuals to submit to genetic testing if the request for testing is supported by a sworn statement of a party to the proceeding:
(a) Alleging paternity and stating facts establishing a reasonable possibility of the requisite sexual contact between the individuals; or
(b) Denying paternity and stating facts establishing a possibility that sexual contact between the individuals, if any, did not result in the conception of the child.
(2) A support enforcement agency may order genetic testing only if there is no presumed, acknowledged, or adjudicated father.
(3) If a request for genetic testing of a child is made before birth, the court or support enforcement agency may not order in utero testing.
(4) If two or more men are subject to court-ordered genetic testing, the testing may be ordered concurrently or sequentially.[[10]]
¶ 22 The plain words of this statute state the legislature's intent that genetic testing is mandatory where there is a properly supported motion of a party to a parentage proceeding, subject to limited exceptions. "Where a provision contains both the words `shall' and `may,' it is presumed that the lawmaker intended to distinguish between them, `shall' being construed as mandatory and `may' as permissive."[11] Thus, as a general rule, this court interprets statutory directives using the word "shall" as mandatory or imperative in character.[12]
¶ 23 No one argues that any of the exceptions listed under RCW 26.26.405(2)-(4) apply to the facts of this case. Of the remaining exceptions to mandatory testing stated in the first sentence of RCW 26.26.405(1), RCW 26.26.535 is the only exception to the mandate for genetic testing that appears to have been addressed below. That provision states:
(1) In a proceeding to adjudicate parentage under circumstances described in RCW 26.26.530, a court may deny genetic testing of the mother, the child, and the presumed father if the court determines that:
(a) The conduct of the mother or the presumed father estops that party from denying parentage; and
(b) It would be inequitable to disprove the father-child relationship between the child and the presumed father.

(3) In determining whether to deny genetic testing under this section, the court shall consider the best interest of the child, including the following factors:
(a) The length of time between the proceeding to adjudicate parentage and the time that the presumed father was placed on notice that he might not be the genetic father;
(b) The length of time during which the presumed father has assumed the role of father of the child;

*496 (c) The facts surrounding the presumed father's discovery of his possible nonpaternity;
(d) The nature of the father-child relationship;
(e) The age of the child;
(f) The harm to the child which may result if presumed paternity is successfully disproved;
(g) The relationship of the child to any alleged father;
(h) The extent to which the passage of time reduces the chances of establishing the paternity of another man and a child support obligation in favor of the child; and
(i) Other factors that may affect the equities arising from the disruption of the father-child relationship between the child and the presumed father or the chance of other harm to the child.
(10) In a proceeding involving the application of this section, the child must be represented by a guardian ad litem.
(11) A denial of genetic testing must be based on clear and convincing evidence.
(12) If the court denies genetic testing, it shall issue an order adjudicating the presumed father to be the father of the child.[[13]]
¶ 24 We conclude that this latter exception does not apply here. First, the plain words of the statute state that it applies to proceedings "to adjudicate parentage under circumstances described in RCW 26.26.530." RCW 26.26.530 addresses the statute of limitations for an action to adjudicate the parentage of a child with a "presumed father." RCW 26.26.011(15), the definitions section of the UPA, defines a presumed father as:
a man who, under RCW 26.26.116, is recognized to be the father of a child until that status is rebutted or confirmed in a judicial proceeding.
But there was no "presumed father" either at the commencement of this action or at the time of the motion for genetic testing. At both times, Tim was an "adjudicated father," which RCW 26.26.011(2) defines as:
a man who has been adjudicated by a court of competent jurisdiction to be the father of a child.
Both Mark's petition in this case and Tim's response show that these parties agreed that Tim was and remains the adjudicated father of the children.[14]
¶ 25 While Tim was the presumed father of the children during his marriage to Tamy, that status changed to adjudicated father by virtue of the dissolution of their marriage and the resulting child support order. That order named him as the obligor parent.[15]
¶ 26 Second, a further review of the wording of RCW 26.26.535(1) and (2) makes clear that the statute only applies to presumed fathers, not adjudicated fathers. Thus, the provisions of RCW 26.26.535(2) discussing factors to be considered to determine "the best interest of the child" in denying genetic testing do not apply to the circumstances of this case.
¶ 27 Finally, no one argues that Mark's motion failed to conform to the requirements of RCW 26.26.405, the statute that mandates genetic testing. Our review of his motion and supporting materials leads us to conclude that his motion was properly supported.
¶ 28 For these reasons, we conclude that RCW 26.26.535 does not apply to the circumstances of this case.
¶ 29 In sum, RCW 26.26.405 controls the question whether genetic testing should be ordered. The trial court appears to have denied Mark's motion for genetic testing based on RCW 26.26.535, which provides that a court may deny genetic testing if it concludes that such testing would not be in the child's best interest. But, as discussed above, RCW 26.26.535 only applies in proceedings to adjudicate the parentage of a child with a presumed father. Because this parentage action involves children with an adjudicated father, RCW 26.26.535 does not *497 apply. Under the circumstances here, genetic testing of the minor children, and such other persons as the court may properly designate, is mandated.
¶ 30 Tim argues that this statutory analysis leads to an incorrect result. But he does not explain how the plain words of the statute show a different legislative intent than what we have discussed. Thus, there is no alternative analysis before us to consider.
¶ 31 Rather, he claims that case law supports the trial court's exercise of discretion in denying Mark's motion for genetic testing based on the best interest of the children. He cites McDaniels v. Carlson,[16]In re Marriage of Swanson,[17]In re Marriage of Wendy M.,[18]State ex rel. Campbell v. Cook,[19] and In re Marriage of Thier[20] for support. We conclude that none of these cases are persuasive with respect to the narrow issue before us: deciding whether genetic testing should be granted pursuant to the current form of the UPA.
¶ 32 We acknowledge that the cited cases stand for the general proposition that the best interest of the child applies in actions involving the adjudication of paternity. But all of these cases predate the 2002 amendments to the UPA, including the adoption of RCW 26.26.405 and RCW 26.26.535. Prior to the 2002 amendments, the statutory provision governing genetic testing did not distinguish among actions involving presumed, acknowledged, and adjudicated fathers.[21] The 2002 amendments added the language at issue here. That plain language directs that the court shall order genetic tests on a motion supported by the requisite allegations in a case involving an adjudicated father. In contrast, the court may deny a motion for genetic testing in a case involving a presumed father. This language is not subject to interpretation. It clearly requires genetic testing in a case involving an adjudicated father. On the other hand, whether genetic testing is permitted in a case involving a presumed father is subject to the court's exercise of discretion, as guided by the statutory factors set forth in RCW 26.26.535(2).
¶ 33 In sum, because none of the cited cases deal with the plain language of RCW 26.26.405 and 535, we conclude that they are not persuasive on the narrow question of genetic testing. In reaching this conclusion, we do not suggest that the best interest of the child standard is not otherwise applicable in a parentage proceeding.
¶ 34 Tim also argues that In re Parentage of M.S.[22] supports his contention that the 2002 amendments to the UPA did not eliminate the trial court's discretion to deny genetic testing if the court concludes that it would be contrary to the best interest of the child. He misreads that case.
¶ 35 There, on facts similar to this case, an allegedly biological father moved to establish parentage after the dissolution of the marriage of the presumed father and mother.[23] The trial court dismissed the petition as untimely, concluding that the alleged father failed to bring the action within two years of the child's birth as required by RCW 26.26.530.[24]
¶ 36 This court overturned the trial court's order dismissing the petition, concluding that the action was governed by RCW 26.26.540. This court reasoned that the presumed father, who was married to the mother prior to the dissolution, became an adjudicated father upon the dissolution of his marriage to the *498 child's mother.[25] Under RCW 26.26.540 an action to establish parentage must be brought within two years of the date of the adjudication. Because that date had not run, the action was timely.[26]
¶ 37 Tim relies on a single sentence in the opinion to support his argument that the trial court may deny a motion for genetic testing if it determines that would be in the best interest of the child. That sentence directs on remand, "[t]he mother's wishes and the child's best interests should be considered in conjunction with the merits of the petition and the remedy, if any." This single sentence is not persuasive.[27] As this court clearly stated in that opinion, "[t]he only issue presented . . . is whether the trial court erred by dismissing [the alleged father's] petition on statute of limitations grounds."[28] In sum, this court did not then have before it the question we now face: whether RCW 26.26.405 mandates genetic testing without an express determination of the best interest of the child. We hold that it does.

Equal Protection
¶ 38 Tim next argues that RCW 26.26.405 violates the equal protection clauses of the federal and state constitutions. He claims that the statute invidiously discriminates between the children of married and unmarried couples. Because Tim fails to prove beyond a reasonable doubt that the statute is unconstitutional, we disagree.
¶ 39 The equal protection clauses of the Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington Constitution require that people similarly situated under the law receive similar treatment from the State.[29] In order to determine whether a statute violates equal protection, one of three tests is employedstrict scrutiny, intermediate scrutiny, or the rational basis test.[30] The appropriate level of scrutiny depends upon the nature of the alleged classification and the rights involved.[31]
Suspect classifications, such as race, alienage, and national origin, are subject to strict scrutiny. Strict scrutiny also applies to laws burdening fundamental rights or liberties. Intermediate scrutiny applies only if the statute implicates both an important right and a semisuspect class not accountable for its status. Absent a fundamental right or suspect class, or an important right or semi-suspect class, a law will receive rational basis review.[[32]]
¶ 40 "A classification passes rational basis review so long as it bears a rational relation to some legitimate end."[33]
Social and economic legislation that does not implicate a suspect class or fundamental right is presumed to be rational; this presumption may be overcome by a clear showing that the law is arbitrary and irrational. A legislative distinction will withstand a minimum scrutiny analysis if, first, all members of the class are treated alike; second, there is a rational basis for treating differently those within and without the class; and third, the classification is rationally related to the purpose of the legislation.[[34]]
¶ 41 "In Washington, it is well established that statutes are presumed constitutional and that a statute's challenger has a heavy burden to overcome that presumption; the challenger must prove that the statute is *499 unconstitutional beyond a reasonable doubt."[35]
¶ 42 Tim claims that a child's relationship with a presumed father is protected from third party paternity actions requesting genetic testing if the court concludes that protecting the relationship with the presumed father is in the best interest of the child. In contrast, a child's relationship with that man after dissolution of the marriage, once he becomes an adjudicated father, is not subject to the same protections. Tim does not argue that this alleged violation of equal protection involves a suspect class or fundamental right, or an important right or semisuspect class. It does not. Thus, we apply rational basis review to the claim that RCW 26.26.405 discriminates against children of unmarried couples.
¶ 43 We conclude that there is no violation of equal protection because the classifications pass rational basis scrutiny. With respect to the first factor of the rational basis test, the statute treats all children with a presumed father the same and treats all children with an adjudicated father the same. Second, there is a rational basis for treating differently the children in these two classes with respect to a request for genetic testing. Our UPA, which is based on the Uniform Parentage Act, gives the court a degree of discretion in deciding whether to deny genetic testing where a child has a presumed father but requires disputes involving an adjudicated father to be resolved by genetic testing.[36] This distinction furthers the goal of preserving family stability for a child with a presumed father, while giving priority to accurate paternity determinations in cases involving a child with a court adjudicated father.[37] Third, the classification is rationally related to this purpose of the legislation.
¶ 44 In sum, the statute passes rational basis scrutiny. Tim fails in his burden to prove beyond a reasonable doubt that the statute violates the equal protection clauses of the state or federal constitutions.
¶ 45 Tim also argues that the 2002 amendment to § 609 of the Uniform Parentage Act supports his argument that RCW 26.26.405 unconstitutionally discriminates against children of unmarried couples. But Washington did not adopt that amendment. In any event, the rational basis test, which we conclude is satisfied in this case, determines whether a statute violates equal protection.
¶ 46 Tim also argues that Mark should be estopped from asserting paternity because he could have asserted his right much earlier in the children's lives. We conclude that Mark is not estopped from bringing this action.
¶ 47 Tim's only citation to legal authority supporting his estoppel argument is a comment by the drafters on § 608 of the revised 2002 Uniform Parentage Act. That comment, in its entirety, states that the doctrine of estoppel is incorporated into the statutory language of § 608. But the 2002 version of § 608 of the Uniform Parentage Act was never adopted by Washington. Thus, it is not applicable to this action. There being no separate analysis why the elements of estoppel are satisfied here, we reject this claim.
¶ 48 Tim also argues that the doctrine of laches should bar Mark from challenging Tim's paternity. We disagree.
¶ 49 Laches requires a showing that (1) the claimant had knowledge of facts constituting the cause of action or a reasonable opportunity to discover such facts; (2) unreasonable delay on the part of the claimant in commencing the action; and (3) damage to the person asserting the action.[38] Laches does not bar Mark's action. He timely commenced this proceeding under the proper *500 statute of limitations. We are not convinced that laches bars this action.
¶ 50 The trial court incorrectly denied Mark's properly supported motion for genetic testing. We reverse and remand with directions that the court enter an order directing genetic testing of the children and such other proper persons as the court may direct, all pursuant to RCW 26.26.405.

PARENTING PLAN
¶ 51 On appeal, Mark initially challenged the parenting plan that the court approved following trial. Based on approval of a new parenting plan after the filing of this appeal, he now claims the issues he raised in his challenge to the former parenting plan are moot.
¶ 52 Tim argues that if we remand, Tim, Tamy, and Mark should be bound by their stipulation that the person who is determined not to be the adjudicated father is a de facto parent. But there is no citation to the record to any stipulation other than the parties' agreement that Mark met the criteria for a "de facto" parent. It appears that the trial court relied on this stipulation when it approved the parenting plan following trial. A similar provision as to Mark's "de facto" parent status appears in the present parenting plan, which is in the supplemental record on appeal.
¶ 53 We decline to address any issue other than Mark's right to genetic testing pursuant to RCW 26.26.405. The former parenting plan is no longer effective, having been expressly supplanted by the present parenting plan. The present parenting plan became effective while this appeal was in progress and is not before us for review.
¶ 54 In declining to address issues other than genetic testing, we expressly decline to address the validity or enforceability of the parties' stipulation that is in this record. However, we presume that the parties and the trial court are aware of In re Parentage of L.B.[39] and In re Parentage of M.F.[40]
¶ 55 We reverse the order denying genetic testing and remand for entry of an order directing genetic testing of the children and other proper persons.
WE CONCUR: LAU and SCHINDLER, JJ.
NOTES
[1] We grant, in part, Mark Kjolhaug's motion to supplement the record. The motion is granted with respect to supplementing the record with the Order on Objection to Relocation/Modification of Custody Decree/Parenting Plan/Residential Schedule and the Parenting Plan Final Order. The motion is denied with respect to the Guardian Ad Litem Report. Mark Kjolhaug's motion to file a supplemental brief following oral argument of the case is denied.
[2] For clarity, we adopt the naming conventions of the three adults who are the only parties in this appeal.
[3] RCW 26.26.630(1)(b) provides:

(1) Except as otherwise provided in subsection (2) of this section, a determination of parentage is binding on:
. . . .
(b) All parties to an adjudication by a court acting under circumstances that satisfy the jurisdictional requirements of RCW 26.21.075.
[4] Am. Cont'l Ins. Co. v. Steen, 151 Wash.2d 512, 518, 91 P.3d 864 (2004); Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002).
[5] Campbell & Gwinn, 146 Wash.2d at 9-10, 43 P.3d 4.
[6] Id. at 9, 43 P.3d 4.
[7] Advanced Silicon Materials, LLC v. Grant County, 156 Wash.2d 84, 89, 124 P.3d 294 (2005).
[8] See Law of 2002, ch. 302, § 711; Second Substitute H.B. 2346, 57th Leg., Reg. Sess. (Wash. 2002).
[9] See Law of 2002, ch. 302, § 711; Second Substitute H.B. 2346, 57th Leg., Reg. Sess. (Wash. 2002).
[10] (Emphasis added.)
[11] Scannell v. City of Seattle, 97 Wash.2d 701, 704, 648 P.2d 435 (1982).
[12] Ballasiotes v. Gardner, 97 Wash.2d 191, 195, 642 P.2d 397 (1982).
[13] (Emphasis added.)
[14] Clerk's Papers at 4-5, 13.
[15] In re Matter of the Parentage of M.S., 128 Wash.App. 408, 413, 115 P.3d 405 (2005) (citing RCW 26.26.630(3)(b)).
[16] 108 Wash.2d 299, 309-10, 738 P.2d 254 (1987).
[17] 88 Wash.App. 128, 136, 944 P.2d 6 (1997).
[18] 92 Wash.App. 430, 432, 962 P.2d 130 (1998).
[19] 86 Wash.App. 761, 769-70, 938 P.2d 345 (1997).
[20] 67 Wash.App. 940, 946, 841 P.2d 794 (1992).
[21] See former RCW 26.26.100 (1998) ("The court may, and upon request of a party shall, require the child, mother, and any alleged or presumed father who has been made a party to submit to blood tests or genetic tests of blood, tissues, or other bodily fluids.").
[22] 128 Wash.App. 408, 416, 115 P.3d 405 (2005).
[23] Id. at 410-11, 115 P.3d 405.
[24] Id. at 410, 115 P.3d 405.
[25] Id. at 414, 115 P.3d 405.
[26] Id.
[27] Id. at 416, 115 P.3d 405.
[28] Id.
[29] State v. W.W., 76 Wash.App. 754, 758, 887 P.2d 914 (1995).
[30] State v. Harner, 153 Wash.2d 228, 235-36, 103 P.3d 738 (2004).
[31] State v. Hirschfelder, 170 Wash.2d 536, 242 P.3d 876, 883 (2010).
[32] Id. (internal quotation marks and citations omitted).
[33] Id. (internal quotation marks omitted).
[34] Id. (internal quotation marks and citations omitted).
[35] School Districts' Alliance for Adequate Funding of Special Educ. v. State, 170 Wash.2d 599, 605, 244 P.3d 1 (2010) (citing Wash. Fed'n of State Employees v. State, 127 Wash.2d 544, 558, 901 P.2d 1028 (1995)).
[36] John J. Sampson, Preface to the Amendments to the Uniform Parentage Act (2002), 37 Fam. L.Q. 3-4 (2003).
[37] Id.
[38] In re Marriage of Dicus, 110 Wash.App. 347, 357, 40 P.3d 1185 (2002).
[39] 155 Wash.2d 679, 122 P.3d 161 (2005).
[40] 168 Wash.2d 528, 536, 228 P.3d 1270 (2010).