IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF | ) ) ) | No. 35332-0-III |
| J. L.-R. | ) ) ) | UNPUBLISHED OPINION |

FEARING, J. — We address familiar questions surrounding RCW 26.33.120, the adoption statute that allows termination of a parent's rights to the child because of disregard for parental obligations. Because substantial evidence supports the trial court's findings and conclusions supporting the termination of appellant José Leon-Rivera's paternal rights and because precedent upholds the constitutionality of RCW 26.33.120, we affirm the trial court's order of termination.

FACTS

In 2009, José Leon-Rivera met Janelle Guzman, and the couple thereafter commenced cohabiting together. Guzman then had two children, we fictitiously call Jasmine and Esther, from a previous marriage. Janelle Guzman's daughter Esther suffers from celiac disease, a gluten intolerance, and adheres to a particular diet to prevent

symptoms from the disease. Guzman purchases special food for Esther.

On an unidentified day during the summer of 2010, José Leon-Rivera returned home drunk, and Guzman expressed dismay because she did not wish Leon-Rivera to drink or be intoxicated in front of her children. Guzman directed Leon-Rivera to leave the residence. In response, Leon-Rivera threw a shovel at her, thereby cutting Guzman's leg.

On July 25, 2011, Janelle Guzman bore José Leon-Rivera a son, who we pseudonymously name Juan. After Juan's birth, Leon-Rivera cared for Janelle's two older children and Juan two to three days a week for up to three hours at a time while Guzman worked. Guzman worked at McDonald's and Jack-in-the-Box. Leon-Rivera worked for Specialty Floor Care at night as a custodian.

Janelle Guzman concluded that she could not depend on José Leon-Rivera with childcare. Leon-Rivera constantly phoned Guzman while he watched the children. During the calls, Leon-Rivera asked inane questions, such as, "[h]ow do you make a bottle?" Report of Proceedings (RP) at 123. While Leon-Rivera supervised Esther, he failed to feed Esther the diet needed for celiac disease, a failure that caused Esther stomach distress. The stomach ailment subsided when Leon-Rivera ended his occasional care for Esther. Lisa Rodriguez, Janelle Guzman's close friend and relative, observed Leon-Rivera bicker with Jasmine and Esther as if Leon-Rivera was another child.

Since José Leon-Rivera worked nights, he slept during the day. On one occasion, Lisa Rodriguez retrieved Juan from daycare because Juan was sick. When Leon-Rivera later fetched Juan from Rodriguez's home, he did not ask about Juan's wellbeing, the nature of Juan's illness, or any medications taken or needed.

The romantic relationship between José Leon-Rivera and Janelle Guzman deteriorated after Juan's birth. During the summer of 2012, Guzman directed Leon-Rivera, after an argument, to leave the home. Leon-Rivera departed, but not before he slashed two of Guzman's car tires.

In January 2013, Janelle Guzman discovered on Facebook that José Leon-Rivera had a new girlfriend who was expecting his child. Leon-Rivera's girlfriend gave birth to a daughter, Betty. Betty is also a pseudonym. Leon-Rivera thereafter cared for Betty because of her mother's incarceration.

Janelle Guzman informed José Leon-Rivera that she would not pursue child support if Leon-Rivera provided $100 a month and a box of diapers. Guzman also told Leon-Rivera that he could see Juan once a week because she believed it important for Leon-Rivera to be present in Juan's life. Between the summer of 2012 and March 2013, Leon-Rivera made one $100 payment, once bought diapers, and saw Juan on three occasions.

On an unidentified day in March 2013, Janelle Guzman met José Leon-Rivera to retrieve Juan. Leon-Rivera arrived an hour late, and Guzman confronted him. In

retaliation, Leon-Rivera flung Juan at Guzman and threw Juan's car seat on the ground.

Guzman gave Juan a bath later that day and noticed bruising on Juan's ribs. Guzman did

not suspect that Leon-Rivera hurt Juan. Nevertheless, she worried that Leon-Rivera did

not know how Juan bruised himself.

At some unidentified date in the spring 2013, Janelle Guzman started to date

coworker José Armando Guzman. Beginning in April 2013, José Leon-Rivera never

visited Juan and never sought to enforce his parenting rights. Lisa Rodriguez texted

Leon-Rivera and attempted to arrange visitation, but Leon-Rivera never responded. In

April, Janelle Guzman moved in with José Armando Guzman after the couple purchased

a home together. In July 2013, an unnamed female, on behalf of Leon-Rivera, delivered

a present to Juan on his second birthday, but Janelle Guzman refused the gift.

Early in 2014, nine months after he had last seen Juan, José Leon-Rivera sent a

representative to Janelle Guzman's residence to request a parenting plan. A lawyer

informed Guzman that Leon-Rivera did not properly file any legal pleadings, so Guzman

prepared, but did not file, a response. Leon-Rivera apparently filed some pleadings,

however, because Guzman received a letter requesting mandatory mediation. She

attended a mediation session. The mediation did not result in a resolution, and the clerk's

office later dismissed the proceeding for want of prosecution.

Janelle Guzman and José Armando Guzman wed on Valentine's Day 2015. The

couple have a daughter together. Guzman and her older daughters, Esther and Jasmine,

know that José Armando Guzman is not Juan's biological father, but, nevertheless, have not informed Juan that Leon-Rivera is his natural father. Janelle Guzman believes withholding this information from Juan serves his best interest. According to Janelle Guzman, Juan believes José Armando Guzman to be his father. According to Lisa Rodriguez, Juan prefers to be with José Armando Guzman over Janelle. According to Rodriguez, Juan follows José Armando Guzman wherever the latter goes.

In June 2015, José Leon-Rivera started work as a warehouseman at the Jack Frost Fruit Company. When the Division of Child Support garnished Leon-Rivera's wages at the fruit firm for payment of child support for Juan, he quit working.

José Leon-Rivera later lived with his next employer and his employer's girlfriend, Ramona Coronado Lopez. Lopez grew concerned about how Leon-Rivera treated his daughter, Betty. Leon-Rivera ignored the parenting advice Lopez proffered. Lopez once overheard Leon-Rivera, in the presence of Betty, threaten to decapitate Betty's Chihuahua and throw its head in the garbage. Lopez reported Leon-Rivera's conduct to Child Protective Services (CPS). On learning of the report, Leon-Rivera told Lopez that she would "regret" her conduct if CPS removed Betty from Leon-Rivera's custody. José Leon-Rivera requested a lower paycheck from Ramona Lopez so that the court would not require him to pay Janelle Guzman child support.

By the time of the trial on Janelle Guzman's petition to terminate parental rights, José Leon-Rivera had, as recommended by a guardian ad litem, obtained car insurance

5

and had registered for a parenting class. Nevertheless, Leon-Rivera had missed two class sessions because of his work schedule.

Juan, the young subject of this adoption proceeding, displays traits on the autism spectrum. Guzman testified to her son's behavioral characteristics:

> He doesn't adjust well to change. If you tell him, "we're having dinner at three o'clock," you are having dinner at three o'clock, or he goes into total meltdown, because "You said." He doesn't do well with talking to new people. Even for the first six months that he was in preschool he would not even talk to his teacher. After repeated conversations of, "it's okay at school if you talk to the teacher." He doesn't make new friends well, because he won't talk to them, kind of sits back and just watches.

RP at 140.

## PROCEDURE

On April 14, 2015, Janelle Guzman filed a petition for termination of the parent-child relationship between José Leon-Rivera and Juan. Guzman sought the termination so that José Armando Guzman could adopt Juan. Juan was then three years old. José Leon-Rivera had not seen Juan for two years.

The trial court appointed Terry Lockett, a Department of Social and Health Services (DSHS) guardian ad litem, as an expert witness. In August 2016, Lockett filed a report with her recommendations. She did not recommend termination of José Leon-Rivera's parental rights. Lockett suggested that Leon-Rivera participate in childcare training, and, if he failed to complete such training, the court should terminate his parental rights. Lockett listed six training courses for Leon-Rivera to complete. Lockett

also proposed that Leon-Rivera not have any contact with Juan until Leon-Rivera

completed the courses. Lockett believed the services could be completed within six

months. Finally, Lockett advised that Leon-Rivera obtain car insurance.

During trial on the petition to terminate José Leon-Rivera's parental rights, Terry

Lockett could not initially answer whether or not José Leon-Rivera currently was a fit

parent for Juan. Lockett stated:

> I think that as far as with—my answer to that would be—its
> complex. You've got a child that's been away from him for years. He may
> or may not have special needs. The mom believes he probably does have
> special needs. So that's added into it. He doesn't know that his—has a
> father. That's added into it. And he's got a father that's in need of—some
> assistance. And I think he needs that assistance even if there wasn't—as far
> as with the CPS—unfounded reports or concerns about his parenting, I
> think he—needs assistance anyway just based on the fact of the dynamics
> of this case.
> So,—to confine it to whether he's fit or unfit, I think that, you know,
> it's—I—I don't think he's unfit parent to the daughter that he has. It's a
> big question mark, enough to keep me from saying no contact right now,
> about whether he'd be fit to parent this child or not. I don't know.

RP at 320-21.

When questioned further, Terry Lockett acknowledged that Leon-Rivera was not

fit to parent Juan. At the same time, Lockett conceded that Leon-Rivera had been the

sole caretaker of his daughter, Betty, for most of her life and that he performed as a fit

parent to Betty.

The trial court made the following findings by clear, cogent, and convincing

evidence:

15. When Ms. Guzman did leave the children with Mr. Leon-Rivera, he would contact her with basic childcare questions such as 'how to make a bottle.'

16. The relationship between Mr. Leon-Rivera and Ms. Guzman was fraught with problems. They would argue/fight and break up frequently, at least toward the end of the relationship. During an argument in 2010, Mr. Leon-Rivera was intoxicated and threw a shovel at Ms. Guzman cutting her leg. Following an argument in the summer of 2012, Mr. Leon-Rivera slashed two tires on Ms. Guzman's vehicle.

. . . .

49. Ms. Lockett testified that Mr. Leon-Rivera currently is not a fit parent for [Juan].

. . . .

59. Mr. Leon-Rivera is withholding consent to adoption contrary to the child's best interest.

Clerk's Papers (CP) at 203-11. The trial court entered the following conclusions of law:

3. Mr. Leon-Rivera has failed to perform parental duties under circumstances showing a substantial lack of regard for his parental obligations.

4. Mr. Leon-Rivera is withholding consent to adoption contrary to the best interest of said [Juan].

5. It is in the child's best interest that Mr. Leon-Rivera's parental rights be terminated and [Juan] be made free to be adopted by JOSE A. GUZMAN.

CP at 211-12.

## LAW AND ANALYSIS

### Findings of Fact

José Leon-Rivera assigns error to factual findings numbered 15, 16, 49, and 59.

We find no error in those findings.

Our controlling statute, RCW 26.33.120 pronounces:

8

> (1) Except in the case of an Indian child and his or her parent, the parent-child relationship of a parent may be terminated upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

Accordingly, the adoption code requires that "clear, cogent, and convincing evidence" be presented to sustain an order terminating parental rights. *In re H.J.P.*, 114 Wn.2d 522, 532, 789 P.2d 96 (1990). Under this standard of proof, the ultimate fact must be shown by evidence to be "highly probable." *In re Pawling*, 101 Wn.2d 392, 399, 679 P.2d 916 (1984). A trial court's factual findings will not be disturbed on appeal if they are supported by substantial evidence that satisfies the "highly probable" test. *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). This court is not entitled to reweigh the credibility of witnesses. *In re Welfare of Sego*, 82 Wn.2d at 739-40.

Finding of fact 15 reads that, when Janelle Guzman left the children with José Leon-Rivera, he contacted her with basic childcare questions such as preparing a bottle. Evidence renders this finding highly probable because Janelle Guzman testified that Leon-Rivera called her and asked how to make a bottle. Lisa Rodriguez also testified that she overheard Guzman telling Leon-Rivera of the location of the label on the child's bottle. During his trial testimony, Leon-Rivera denied asking about the bottle, but the court found he lacked credibility.

Finding of fact 16 reads that the relationship between José Leon-Rivera and Janelle Guzman was fraught with problems, and the finding describes violence between the two. Testimony rendered this finding highly probable. Janelle Guzman testified that, after an argument with Leon-Rivera, he threw a shovel at her. Guzman also testified to Leon-Rivera slashing her tires.

Finding of fact 49 reads that Terry Lockett testified that José Leon-Rivera currently is not a fit parent for Juan. Admittedly, Terry Lockett was initially unwilling to answer whether José Leon-Rivera was fit to parent Juan. Nonetheless, when pressed, she stated Leon-Rivera was unfit to parent Juan given the circumstances and Juan's behavioral problems. Thus, the undisputed testimony shows that Lockett in the end reached this conclusion.

Finding of fact 59 declares that José Leon-Rivera is withholding consent to adoption contrary to the child's best interest. The undisputed facts established that José Leon-Rivera refused to consent to José Armando Guzman's adoption of Juan. The facts also showed that Leon-Rivera has not seen Juan since March 2013. Leon-Rivera did not pursue a parenting plan with the court. Leon-Rivera took affirmative steps to shirk his responsibility to pay support for Juan. Juan has developed a father-son relationship with José Armando Guzman. Guzman is the only man Juan considers as his father. Evidence rendered finding of fact 59 highly probable.

No. 35332-0-III
*In re Adoption of J.L.-R.*


Statutory Grounds for Termination

The trial court concluded that José Leon-Rivera failed to perform his parental

duties under circumstances showing a substantial lack of regard for his parental

obligations. Leon-Rivera challenges this ruling.

We have already quoted RCW 26.33.120(1), a provision of the adoption code that

allows termination of a parent's rights, to afford another person the opportunity to adopt

the child, when the parent "has failed to perform parental duties under circumstances

showing a substantial lack of regard for his or her parental obligations." Based on this

statute, Washington courts have determined the following to be the minimum elements of

parental obligation:

> (1) express love and affection for the child; (2) express personal
> concern over the health, education, and general well-being of the child; (3)
> the duty to supply the necessary food, clothing, and medical care; (4) the
> duty to provide an adequate domicile; and (5) the duty to furnish social and
> religious guidance.

*In re Adoption of Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969).

Leon-Rivera admits he has parenting deficiencies but still deems himself a fit

parent. Leon-Rivera claims Janelle Guzman interfered with his ability to perform

parental obligations because of anger resulting from him impregnating another woman.

Leon-Rivera also attributes his failure to work out a parenting plan to his ignorance of the

United States legal system.

11

The record demonstrates that José Leon-Rivera took little interest in parenting or showing affection toward Juan. Leon-Rivera attempted to circumvent his requirement to pay child support and did not work with Janelle Guzman when she attempted to arrange a visitation schedule with him. Leon-Rivera did not undergo the required services Terry Lockett suggested he complete. Based on testimony of Lisa Rodriguez and Janelle Guzman, Juan enjoyed a stable home with his mother, half-sisters, and a respectable father figure in José Armando Guzman. Coupled with Juan's behavioral issues and Juan's belief that José Armando Guzman is his biological father, José Leon-Rivera withheld adoption contrary to the best interest of Juan. The record supports the trial court's conclusion that Leon-Rivera neglected his parental duties under circumstances showing a substantial lack of regard for his parental obligations.

*In re H.J.P.*, 114 Wn.2d 522 (1990) bolsters our conclusion. The state Supreme Court affirmed the termination of the father's parental rights because of his lack of contact with the child and his failure to pay child support.

Due Process

José Leon-Rivera attacks RCW 26.33.120(1) on constitutional grounds. He argues that the statute violates his fundamental due process rights to parent his biological child. He contends the statute treats him differently than parents, whose child undergoes the state dependency system, such that the statute violates his equal protection rights. Both

12

arguments have already been rejected by the state Supreme Court and this court. We address the due process challenge first.

José Leon-Rivera claims the termination of his parental rights violates his substantive due process rights because the termination was not necessary to protect a child from harm. Parents have a fundamental right to autonomy in child-rearing decisions. *In re Custody of Smith*, 137 Wn.2d 1, 13, 969 P.2d 21 (1998), *aff'd*, *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). A statute that deprives a fundamental right must pass strict scrutiny, meaning, the legislation in question must be necessary to further a compelling government interest. *In re Custody of Smith*, 137 Wn.2d at 15. Therefore, parental rights may be terminated only on a showing of parental unfitness. *Santosky v. Kramer*, 455 U.S. 745, 760, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

The Washington Supreme Court in *In re H.J.P.*, 114 Wn.2d 522 (1990), held RCW 26.33.120(1) did not violate a parent's due process rights. The statute does not expressly demand that the trial court find the parent unfit before terminating his or her rights. Nevertheless, implicit in the language "has failed to perform parental duties under the circumstances showing a substantial lack of regard for his or her parental obligations" is the concept of unfitness. The court wrote:

> Parental unfitness is established by showing that the nonconsenting parent "has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations . . . ."

*In re H.J.P.*, 114 Wn.2d at 531.

José Leon-Rivera asserts a nuanced challenge to RCW 26.33.120(1) that the Supreme Court did not directly address in *In re H.J.P.* Leon-Rivera contends the statute fails constitutional muster because the statute does not expressly require that his continued parental relationship with Juan will harm Juan. Division Two of this court, however, directly addressed this contention in *In re Adoption of K.M.T.*, 195 Wn. App. 548, 381 P.3d 1210 (2016), *review denied*, 187 Wn.2d 1010, 388 P.3d 489 (2017).

In *In re Adoption of K.M.T.*, a mother petitioned to terminate the father's parental rights. The court granted the petition, and the father appealed arguing, among other contentions, that the court violated his substantive due process right by termination of parental rights without first finding that termination was necessary to prevent harm to the child. The court held that the adoption termination statute complies with due process even though it does not require any showing that the child would be harmed if the parent's rights were not terminated.

Similar to the appellant in *K.M.T.*, José Leon-Rivera does not cite any authority establishing that due process requires a finding of harm to the child before a parent can terminate parental rights under RCW 26.33.120(1) for the purposes of an adoption. He forwards no decision that demands such a finding even when a parent's rights are

14

forfeited at the end of a dependency proceeding. We adopt the reasoning of our sister

division in *K.M.T.*

Equal Protection

Finally, José Leon-Rivera contends that the trial court's application of RCW

26.33.120(1) violates his constitutional right to equal protection. Leon-Rivera argues that

parents subjected to a dependency action under RCW 13.34.090(1) unequally enjoy more

protections from the termination of parental rights than when the other parent seeks to

terminate parental rights for purposes of an adoption. This court has rejected this

argument in *In re Adoption of K.M.T.*, 195 Wn. App. 548 (2016) and *In re Interest of*

*Skinner*, 97 Wn. App. 108, 982 P.2d 670 (1999).

Statutes are presumed constitutional, and the challenger of a statute must prove

beyond a reasonable doubt that the statute is unconstitutional. *In re Welfare of A.W.*, 182

Wn.2d 689, 701, 344 P.3d 1186 (2015). Equal protection requires that all persons

similarly situated should be treated alike. *American Legion Post 149 v. Department of*

*Health*, 164 Wn.2d 570, 608, 192 P.3d 306 (2008). The equal protection clauses of the

United States Constitution and the Washington Constitution "require that people similarly

situated under the law receive similar treatment from the State." *In re Parentage of*

*K.R.P.*, 160 Wn. App. 215, 229, 247 P.3d 491 (2011). Whether a defendant is similarly

situated is an inquiry that is determined by and relative to the purpose of the challenged

law. *State v. Manussier*, 129 Wn.2d 652, 673-74, 921 P.2d 473 (1996).

Parents of dependent children who are parties to a termination proceeding under RCW 13.34.180 are not similarly situated to parents of nondependent children who are parties to adoption proceedings under RCW 26.33.120. Each statute fulfills a substantially different governmental function and purpose. *In re Interest of Skinner*, 97 Wn. App. at 117 (1999). A dependent child has no fit parents and needs the State to intervene in his or her life to protect him or her from the harm or neglect caused by both parents. In this instance, Juan has a fit mother and stepfather who willingly support and care for him.

The State holds no constitutional obligation to provide services to an unfit parent before terminating parental rights. *In re Interest of Skinner*, 97 Wn. App. at 116. Because of the differences in the purposes of RCW 13.34.180, parents of dependent children are not similarly situated to parents of nondependent children who are parties to adoption proceedings under RCW 26.33.120. *In re Interest of Skinner*, 97 Wn. App. at 115-16.

José Leon-Rivera asks us to disagree with Division One's decision in *In re Interest of Child Skinner* because we should apply strict scrutiny to RCW 26.33.120 and *Skinner*'s analysis failed to employ strict scrutiny. We agree *Skinner* failed to apply strict scrutiny, but we consider RCW 26.33.120 to survive such scrutiny. The State has a compelling interest in the welfare of a child. *In re Dependency of M.H.P.*, 184 Wn.2d 741, 762, 364 P.3d 94 (2015). Leon-Rivera forwards no decision that applies strict

16

scrutiny in the context of an adoption statute allowing termination of one parent's rights.

José Leon-Rivera also contends that Janelle Guzman or the State should have filed dependency proceedings before terminating his rights to Juan. We note, however, that dependency proceedings do not fit the situation where one parent is fit. The trial court would have lacked jurisdiction for a dependency action. In addition, Leon-Rivera received a full panoply of rights that a parent receives in a dependency action, including appointment of counsel. As in a dependency action, the trial court needed to find by clear, cogent and convincing evidence that Leon-Rivera was an unfit parent.

## CONCLUSION

We affirm the trial court's termination of José Leon-Rivera's rights to Juan so that José Armando Guzman may adopt the boy.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____            _____
Siddoway, J.                                                 Pennell, A.C.J.

17