[No. 55752-1-I. Division One. July 24, 2006.]

*In the Matter of the Parentage of* C.S.

DEAN S. ET AL., *Appellants*, v. FREDERICK S., *Respondent*.

*Patricia S. Novotny*, for appellants.

*Catherine W. Smith* and *Valerie A. Villacin* (of *Edwards Sieh Smith & Goodfriend, P.S.*) and *G. Olaf Hansen* (of *Magnuson Lowell, P.S.*), for respondent.

¶1 ELLINGTON, J. — This is an action to disestablish the paternity of a presumed parent and establish the paternity of another man. The questions chiefly pertain to the statute of limitations. We conclude that the discovery rule has no application in such cases and that under the circumstances here, the doctrine of estoppel does not apply to toll the limitations period. Given that the child is not a party, and thus not bound, we reject arguments that the limitations period violates the child's due process and equal protection rights. We also hold that claims for common law determination of parentage and fraud were without basis. We affirm dismissal of the petition.

## FACTS

¶2 Sherry and Dean[1] married in 1995. The marriage was, by mutual agreement, not sexually monogamous, and the couple belonged to an Internet "swingers" group. At a party sponsored by the group in October 2001, Sherry met Frederick, who was also married but whose wife was unaware of his activities. Sherry and Frederick later met several times at a hotel, as a result of which Sherry became pregnant.

¶3 Sherry informed Dean of her pregnancy and also told him he might not be the child's father. C.S. was born on July

---

[1] We refer to the parties by their first names only. *See In re Marriage of Wendy M.*, 92 Wn. App. 430, 432 n.1, 962 P.2d 130 (1998) (in action to disestablish parentage, opinion refers to parties by first names and initials only); *Linda D. v. Fritz C.*, 38 Wn. App. 288, 687 P.2d 223 (1984) (parties' initials used to protect identity of child).

17, 2002. Dean was present at the birth and was named as the father on the birth certificate, and the child was given Dean as his middle name.

¶4 On August 11, 2002, a DNA (deoxyribonucleic acid) test excluded Dean as the biological father. The following month, Sherry and Dean decided to end their marriage. They continued living together for a time in order to make alternative arrangements. Dean states that he has had no involvement in caring for C.S.

¶5 In November 2002, Sherry contacted Frederick via e-mail. She claims Frederick lied about his blood type to convince her he could not be C.S.'s father. Frederick then removed his identity from the Internet forum. Sherry did not know Frederick's last name and was unable to contact him until July 2003, when she recognized him from an Internet personal ad. Frederick once more terminated his Internet identity.

¶6 In November 2003, C.S. was scheduled for surgery. After some research, Sherry was able to locate Frederick to seek family medical information. Frederick met with Sherry and C.S., gave Sherry $200, and said he would start a college fund for C.S.

¶7 In January 2004, a DNA test confirmed Frederick was C.S.'s father. Frederick started paying Sherry $500 a month. In e-mail correspondence, Frederick generally referred to supporting C.S. for a period of two years, though in one message he agreed to provide $500 monthly for 16 years.

¶8 In May 2004, Sherry informed Frederick that she and Dean planned to remove Dean's name from C.S.'s birth certificate and asked Frederick to replace it with his own. Frederick refused, citing concern that as a public document, the certificate might alert his wife to his infidelity. Frederick, who has a law degree, told Sherry that his legal research indicated Dean could not deny paternity because Dean was the presumed father. Frederick suggested Sherry consult a lawyer.

¶9 This situation came to court on August 4, 2004, when Dean filed a petition seeking to disestablish himself as father of C.S. and to adjudicate Frederick as the father. Sherry later joined in the petition and also asserted a common law action for determination of parentage and a claim of fraud and fraudulent concealment. On Frederick's motion, the trial court dismissed the action as barred by the statute of limitations.

## ANALYSIS

### Statute of Limitations

¶10 *Discovery Rule*. Under the Uniform Parentage Act, chapter 26.26 RCW, a man is the presumed father if the child is born during his marriage to the child's mother.[2] A proceeding to adjudicate the parentage of a child who has a presumed father "must be commenced not later than two years after the birth of the child."[3]

¶11 Dean and Sherry acknowledge that he is C.S.'s presumed father and that the petition was filed more than two years after C.S. was born. They contend, however, that the discovery rule should apply to toll the statute and that under the rule, the petition was timely because it was filed less than two years after Dean learned the results of the DNA test excluding him as C.S.'s father.

¶12 We conclude the legislature intended the limitations period to run from the child's birth, not from acquisition of genetic evidence.

¶13 The statute of limitations upon an action generally runs from the time the cause of action accrues.[4] If the discovery rule applies, the limitation period begins to run when the plaintiff discovers, or in the exercise of reasonable

---

[2] RCW 26.26.116(1)(a).

[3] RCW 26.26.530(1).

[4] *See, e.g.*, RCW 4.16.005.

diligence should have discovered, the facts giving rise to the cause of action.[5]

¶14 The discovery rule was first adopted in Washington in *Ruth v. Dight*[6] to avoid injustice in medical malpractice actions. It has since been applied to a variety of tort and contract claims and has been codified by the legislature in some circumstances.[7] The theory of the rule is that limitations statutes are not intended to foreclose a cause of action before the injury is known and that the term "accrue" should not be interpreted to create such a consequence. Thus the courts have construed limitations statutes to mean that certain claims do not accrue until the injured party knows or has reason to know of the harm done.[8]

¶15 But the discovery rule is not available where the legislature has clearly delineated the event that starts the running of the limitations period, for there is then no "accrual" to interpret.[9] Such is the case here.

¶16 Before Washington revised the Uniform Parentage Act in 2002, a presumed father could seek an adjudication of nonpaternity at any time, so long as the action was filed "within a reasonable time after obtaining knowledge of

---

[5] *Peters v. Simmons*, 87 Wn.2d 400, 404-05, 552 P.2d 1053 (1976) (legal malpractice claim).

[6] 75 Wn.2d 660, 453 P.2d 631 (1969).

[7] Over the years, Washington courts have applied the discovery rule to actions involving legal malpractice claims, *Matson v. Weidenkopf*, 101 Wn. App. 472, 3 P.3d 805 (2000); conversion, *Crisman v. Crisman*, 85 Wn. App. 15, 931 P.2d 163 (1997); libel, *Kittinger v. Boeing Co.*, 21 Wn. App. 484, 585 P.2d 812 (1978); breach of fiduciary duty, *Germain v. Pullman Baptist Church*, 96 Wn. App. 826, 980 P.2d 809 (1999); contracts, *Architechtonics Constr. Mgmt., Inc. v. Khorram*, 111 Wn. App. 725, 733, 45 P.3d 1142 (2002); and wrongful adoption, *Price v. State*, 96 Wn. App. 604, 980 P.2d 302 (1999). The legislature has directly incorporated discovery rules into several statutes of limitation, including those for fraud, RCW 4.16.080(4); personal injury arising from acts of childhood sexual abuse, RCW 4.16.340; medical malpractice, RCW 4.16.350; misappropriation of trade secrets, RCW 19.108.060; and Uniform Commercial Code claims for breach of warranty of future performance, RCW 62A.2-725(2).

[8] *Ruth*, 75 Wn.2d at 667-68.

[9] *Id.* at 666 ("legislature may resolve the doubts by enacting that all cases on one side of a precise point will be barred and all those on the other may be maintained").

relevant facts."[10] The former statute thus essentially contained a discovery rule.

¶17 In adopting the revised uniform act, however, the legislature established specific rules and processes for adjudicating paternity. The revised statute requires filing such an action within two years of the child's birth (with a single exception not applicable here).[11] A comment to the Uniform Parentage Act states that after the two year period, "the presumption [of paternity] is immune from attack by any . . . individuals."[12] The two year limit was featured prominently in the Washington House and Senate reports. It is evident that the legislature deliberately abandoned the "reasonable time" approach in favor of a strict two year limitation period. Under these circumstances, there is no room for interpretation and no room for the discovery rule.

¶18 Further, even if a discovery rule were available, it could not, consistent with the Uniform Parentage Act, be triggered by acquisition of DNA evidence. The statute permits filing a paternity action even before the child is born[13] and contemplates that DNA evidence will be pre-

---

[10] Former RCW 26.26.060(1)(b) (1983) ("A man presumed to be a child's father under RCW 26.26.040 may bring an action for the purpose of declaring the nonexistence of the father and child relationship only if the action is brought within a reasonable time after obtaining knowledge of relevant facts. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party.").

[11] RCW 26.26.530(2) provides for a statutory exception to the two year limitations period: "A proceeding seeking to disprove the father-child relationship between a child and the child's presumed father may be maintained at any time if the court determines that: (a) The presumed father and the mother of the child neither cohabited nor engaged in sexual intercourse with each other during the probable time of conception; and (b) The presumed father never openly treated the child as his own." Additionally, the limitations period is extended in paternity actions of children born before the effective date of the statute. *In re Parentage of M.S.*, 128 Wn. App. 408, 415, 115 P.3d 405 (2005) (where child is born before RCW 26-.26.530 took effect, limitations period accrues on statute's effective date of June 13, 2002).

[12] Clerk's Papers at 39.

[13] RCW 26.26.550.

sented.[14] In the usual case, DNA testing is performed by court order after the petition is filed, pursuant to several sections of the Uniform Parentage Act governing such orders.[15] But the act does not permit the court to order DNA testing in utero.[16] The legislature thus knowingly set the limitations period to begin at a point when DNA information is often not available. This is a clear indication the legislature did not intend to make genetic evidence a trigger for the limitations period.

¶19 Both Dean and Sherry knew during Sherry's pregnancy that C.S. was possibly not his child. They thus knew all the facts necessary to the petition even before the statute began to run. The petition to disestablish Dean as C.S.'s father was time barred.

¶20 *Estoppel.* The doctrine of estoppel may apply to prevent a fraudulent or inequitable resort to the statute of limitations, such as where a defendant conceals facts or otherwise induces the plaintiff not to bring suit within the limitations period.[17] Dean and Sherry contend there are material questions of fact as to whether Frederick should be estopped from asserting the limitations defense.

¶21 For Dean, this argument fails at the threshold. Certainly there was no concealment of the facts. To make out a case for estoppel, therefore, Dean must point to some act of Frederick by which he was induced to refrain from enforcing his rights. But Frederick made no representations to Dean, and Dean states, "[I] did not involve myself with the details of the petitioner's negotiations with [Frederick], as I did not believe that it really concerned me."[18] Dean does not claim that any act of Frederick induced him to refrain from filing this action. Rather, he

---

[14] *See* RCW 26.26.600(1).

[15] *See* RCW 26.26.400-.450.

[16] RCW 26.26.405(3).

[17] *Cent. Heat, Inc. v. Daily Olympian, Inc.*, 74 Wn.2d 126, 135, 443 P.2d 544 (1968).

[18] Clerk's Papers at 123.

believed "this was something [Sherry and he] could resolve eventually."[19] Dean can establish no estoppel.

¶22 As to Sherry's arguments, it is useful to observe at the outset that the petition in question sought two forms of relief: to *disestablish* Dean and to *establish* Frederick as C.S.'s father. There is no requirement that these issues be combined. The limitations period applies only to the petition to disestablish Dean's presumed paternity, which, once accomplished, would have allowed a petition to establish Frederick's paternity at any time thereafter.[20] Yet most of Sherry's estoppel arguments pertain to establishing Frederick as C.S.'s father, not to disestablishing Dean.

¶23 Sherry points to Frederick's informal acknowledgment of paternity, his financial support, and his statement that if she took legal action involving him, he would have no further contact. In return, she promised not to expose his infidelities. She claims these factors induced her not to seek legal advice about paternity law and (presumably) not to learn of the two year limitation statute.

¶24 There are two problems with this argument. First, disestablishing Dean's paternity need not have involved Frederick. Second, in his e-mails, Frederick repeatedly urged Sherry to consult an attorney about the applicable law.

¶25 C.S. was born in July 2002. Sherry's conversations with Frederick occurred from the time she found him again in November 2003 to May 2004. Sherry's objective, in addition to financial support, was to ensure that Frederick have contact with C.S. In Sherry's terms, Frederick "vacillated greatly" as to the role he was willing to play and always insisted upon complete secrecy.[21] Frederick believed Dean was the one financially responsible for C.S. and made it clear that his own undertakings were voluntary contri-

---

[19] Clerk's Papers at 124.

[20] RCW 26.26.525.

[21] Clerk's Papers at 89.

butions and not binding obligations. He insisted upon secrecy and made clear that if Sherry took action likely to disclose his infidelities, he would decline further contact. He repeatedly urged her to consult a lawyer.

¶26 These representations, largely memorialized in e-mails, are consistent with his present position. Frederick always refused to become legally obligated in any way, and his statements are consistent with his current claim, which is still that Dean is the presumed and legal father. In addition, even after refusing to be named on the birth certificate, Frederick apparently kept his promise to pay support until Sherry joined in Dean's petition.

¶27 These facts once again pertain only to an action to establish Frederick's paternity, not an action to disestablish Dean's paternity. Which man should be responsible for C.S., financially and otherwise, is surely one question in the minds of the parties, given the DNA test results. But it is two legal questions, involving separate remedies with differing rules. The only parties necessary to disestablishing Dean's paternity were Dean and Sherry.[22] As that is the only statute of limitations sought to be avoided, the various arguments about Frederick's conduct are inapt.

¶28 In further example of the conflation of arguments here, Dean and Sherry rely upon *People ex rel. Rozak v. Herman*,[23] an Illinois case in which the biological father's actions were held to estop him from raising the two year statute of limitations as a defense to the mother's petition to *establish* paternity. But in *Rozak* there was no presumed father, the respondent had acted as the child's father for seven years, and applying the statute of limitations would have left the child without any father for support. And, unlike Illinois, Washington has no statute of limitations where there is no presumed father, so the *Rozak* situation would not arise.

---

[22] RCW 26.26.510.

[23] 65 Ill. App. 3d 55, 382 N.E.2d 417, 419, 22 Ill. Dec. 97 (1978).

¶29 We agree with the trial court that no question of fact is raised here. Frederick's acts were irrelevant to the timely filing of the petition to disestablish Dean's paternity, and estoppel does not bar his limitations defense.

¶30 *Constitutional Arguments*. Lastly, Dean and Sherry argue that the Uniform Parentage Act limitations period violates C.S.'s constitutional due process and equal protection rights. We disagree.

¶31 First, we are doubtful that Dean and Sherry have standing to raise this issue. But in any case, the argument has no merit in this case. C.S. is not a party to these proceedings, and, given the procedural nature of the disposition, he is not bound by their outcome.[24] The statute permits C.S. to bring his own action to establish Frederick as his father.[25] The limitations period presents no invasion of C.S.'s rights to due process or equal protection.

¶32 *Common Law*. Dean and Sherry urge us to recognize a common law cause of action to adjudicate Frederick as C.S.'s father, arguing that otherwise "the actions and inactions of the adults in this case [will] have . . . deprived C.S. of his own action to adjudicate his biological father as his legal father."[26] As previously discussed, C.S. is not bound by any adjudication to which he was not a party and may file his own petition at any time.[27] He has thus not been deprived of any legal rights.[28]

---

[24] RCW 26.26.630(2) ("A child is not bound by a determination of parentage under this chapter unless: (a) The acknowledgment of paternity is consistent with the results of the genetic testing; (b) The adjudication of parentage was based on a finding consistent with the results of genetic testing and the consistency is declared in the determination or is otherwise shown; or (c) The child was represented in the proceeding determining parentage by a guardian ad litem.").

[25] RCW 26.26.505 (child has standing to maintain a proceeding to adjudicate parentage); RCW 26.26.530(1) (time limits apply only to actions by a presumed father, mother, or another individual).

[26] Appellant's Br. at 34.

[27] RCW 26.26.630.

[28] Our ruling takes into consideration the authorities presented in appellant's statement of additional authorities. The statement complied with RAP 10.8; respondent's motion to strike is denied.

¶33 Moreover, a common law remedy survives the enactment of a statutory remedy only "if the legislature has not expressed an intention to preempt the common-law remedy and the common-law remedy fills a void in the law."[29] There is no void in the law of parentage: the Uniform Parentage Act "governs every determination of parentage in this state"[30] and provides a procedure to disestablish a presumed father. The fact that C.S. was conceived in an "open" marriage bears no relevance to issues of paternity or to whether Dean and Sherry exercised their remedies within the limitations period. We see no basis for a common law cause of action.

¶34 *Fraud.* Sherry contends summary dismissal of her fraud claim was improper because questions of fact require a trial. The existence of fraud is normally a question of fact,[31] but such a question may be resolved on summary judgment if reasonable persons could reach only one conclusion, taking all inferences in favor of the nonmoving party.[32]

¶35 Though she fails to cite to the record, Sherry's claim is apparently based on the premise that Frederick, who has a law degree, falsely told her that Washington law foreclosed any action to adjudicate him as C.S.'s father, and she delayed filing the petition in justifiable reliance on these statements.[33] The record does not support her argument. Frederick told Sherry he had consulted with attorneys on the issue and believed Dean would be precluded from denying paternity.[34] But as discussed above, Frederick also

---

[29] *In re Parentage of L.B.*, 121 Wn. App. 460, 476 n.2, 89 P.3d 271 (2004).

[30] RCW 26.26.021.

[31] *Duke v. Boyd*, 133 Wn.2d 80, 83, 942 P.2d 351 (1997).

[32] *Alaska Pac. Trading Co. v. Eagon Forest Prods., Inc.*, 85 Wn. App. 354, 364, 933 P.2d 417 (1997).

[33] *See Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996) (elements of fraud include knowingly false representations justifiably relied upon).

[34] On May 10, 2004, Frederick stated in an e-mail that: "I have been researching this whole paternity issue, and it is not a simple matter of your husband 'denying paternity.' Under the law, he is presumed to be the 'legal father' of [C.S.]. I am sure

repeatedly suggested that Sherry consult an attorney herself.[35] Sherry also knew Frederick was neither practicing law nor an expert in the field of family law.[36] Thus, the record does not allow an inference that Frederick intended Sherry to rely on his statements about Washington law or that Sherry had a right to place reliance on these statements. Summary judgment was appropriate because the record is insufficient to raise a question of material fact on the fraud claim.

## CONCLUSION

 ¶36 This is a troubling set of facts and leaves the court dismayed at the predicament of a child twice abandoned. The legislative limitations period, however, rests soundly upon the value of stability, and if stability is completely absent here despite the legislature's efforts, that does nothing to diminish the wisdom of the general rule. Dean will thus continue, however unwillingly, to serve as C.S.'s legal father.

¶37 Affirmed.

SCHINDLER, A.C.J., and GROSSE, J., concur.

---

you can find the relevant parts of the Washington State law yourself (if you want, I will send you the links), but the facts are not in dispute. You were married when you conceived, you were married when you gave birth. Your husband's name is on the birth certificate. And the fact is . . . that you and your husband are still married, almost two years after [C.S.'s] birth. . . . All of this goes strongly against your husband's denial of paternity (in fact, I believe he would be precluded from denying paternity)." Clerk's Papers at 114. In a follow-up e-mail the same day, Frederick suggested Sherry consult an attorney.

[35] *See* Clerk's Papers at 55 ("I think it is in your own best interests to consult a lawyer, rather than take my word for anything."); Clerk's Papers at 131 ("if you wanted to, you always have the ability to take me to court"); Clerk's Papers at 142 ("please do not take my word for it. I think you need to consult with a lawyer (but make sure he has ALL of the relevant facts and information), find out what the law is, and make judgments accordingly.").

[36] *See* Clerk's Papers at 132 ("Though I know you don't practice law, and [family law] wasn't your field.").