IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Parentage of B.C. | ) | No. 79397-7-I |
| | ) | |
| GEORGE C., | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF SOCIAL & HEALTH | ) | |
| SERVICES | ) | |
| | ) | |
| Respondent. | ) | FILED: January 21, 2020 |
| | ) | |

ANDRUS, J. — George C. appeals the trial court's order denying his motion to vacate the order establishing Casey P. as B.C.'s father.[1]  Because George's presumptive parentage was never rebutted as required by former RCW 26.26.116 of the Uniform Parentage Act[2] (UPA), we reverse and remand for vacation of the order establishing Casey as B.C.'s father.

---

[1] We refer to the parties by their first names and use the initials of the child.  See In re Parentage of C.S., 134 Wn. App. 141, 144 n.1, 139 P.3d 366 (2006) (in action to disestablish parentage and establish paternity, opinion refers to parties by first names and children by initials only).

[2] Chapter 26.26 RCW was repealed and replaced by chapter 26.26A RCW, effective January 1, 2019.  LAWS OF 2018, ch. 6.  As the former version of the UPA applied to the relevant proceedings in this case, we cite to the former statutory provision.

FACTS

George married Patricia, B.C.'s mother, on February 19, 2000. Ten days later, B.C. was born. B.C. is now 19 years of age. The State contends that in December 2010, Patricia filed a petition for dissolution in which she alleged George was not B.C.'s "legal parent," an allegation George purportedly admitted in his answer to the petition, which he later joined. Patricia's dissolution petition and George's answer are not a part of the record, and there is no evidence that Patricia filed a UPA petition to disestablish George's parentage.

In the final dissolution decree, the court found that the marital presumption in favor of George's parentage of B.C. had been rebutted based on genetic test results showing a high probability that Casey was the child's biological father.[3] The court found:

> Due to the late submittal by [petitioner]/mom of Genetic Test Results ([Attachment] "A" Hereto) indicating someone other than Respondent/Husband George . . . may be child [B.C.]'s [biological] father, the [court] finds that statutory presumption of paternity [of] that child in favor of [George] pursuant to apparently fraudulently executed birth certificate is rebutted—[the court] makes no finding of paternity [with regard to] that child and leaves such determination to future action(s) to establish/disestablish paternity which parties themselves may choose to file.

The court also found it necessary to maintain a domestic violence protection order prohibiting George from having contact with Patricia or the children because "Father is in jail awaiting sentencing for crimes against [the] children."[4] George did

---

[3] The dissolution findings indicate that George is the father of three of Patricia's children.

[4] George is currently incarcerated after pleading guilty to three counts of first degree rape of a child for sexually abusing B.C.'s minor sisters. Chapman v. Hilpert, 686 F. App'x 473, 473 (9th Cir. 2017). As part of his sentence, George is prohibited from contacting his daughters, either directly or through a third party. Id. The Department of Corrections imposed additional no-contact orders between George and Patricia and George and his son because of George's attempts to contact his

not sign the court's findings as he was incarcerated at the time. Nor has he appealed these findings or sought to vacate them.

In September 2015, and again in April 2016, George filed a petition to establish his parentage of B.C. In re Parentage of B.C.: George C. v. Patricia C., No. 76053-0-I, slip op. at 2 (Wash. Ct. App. July 23, 2018) (unpublished).[5] When the State of Washington, Department of Social and Health Services appeared in the second case, it reviewed the dissolution decree. Id., slip op. at 3. Based on the findings in that order, the State filed a parentage action to establish Casey as B.C.'s father. Id. Patricia, in a declaration supporting the State's petition, testified that George was not the biological father because B.C. was conceived between May 9, 1999 and July 18, 1999, and she had sexual intercourse with George for the first time in October 1999. But the State did not file a petition to disestablish George's parentage or name him as a party to this action.

The trial court issued findings of fact and conclusions of law in the State's parentage action on September 28, 2016. The court found there was no presumed parent. It also found genetic testing showed a 99 percent or greater probability that Casey is B.C.'s biological father. The court signed the final parentage order establishing Casey as B.C.'s legal parent that same day. B.C. asked the court to change her last name to that of her father, which is reflected in the final parentage order. The final parentage order also indicates B.C. would be residing with Casey.

---

daughters through Patricia and his son. Id. at 474; see also In re the Pers. Restraint of George J. C., No. 78355-6-I (Wash. Ct. App. Jan. 24, 2019) (Division One order dismissing George's personal restraint petition); In re the Pers. Restraint of George J. C., No. 96865-9 (Wash. May 14, 2019) (Washington Supreme Court ruling denying review).

[5] http://www.courts.wa.gov/opinions/pdf/760530.pdf.

The State then sought and obtained an order dismissing George's parentage action because the court had adjudicated parentage. Parentage of B.C., slip op. at 3. George appealed the dismissal of his petition, and we affirmed because the arguments George raised on appeal were challenges to the court's findings in the State's parentage action and not properly raised in that appeal. Id., slip op. at 4-5. We stated "[u]nless that judgment [establishing Casey as B.C.'s father] is overturned, judgment establishing George as a parent cannot proceed." Id., slip op. at 4.

In August 2018, George filed an appeal of the 2016 parentage order. A commissioner of this court dismissed the appeal, indicating that "[t]he trial court docket does not reflect any attempt by [George] to vacate the judgment. He may not appeal the final judgment entered two years ago." (Emphasis omitted.) Because George did not demonstrate extraordinary circumstances precluding him from filing a timely notice of appeal, his appeal was untimely. The commissioner noted that George may seek to vacate the judgment in the trial court but "may not now appeal from the final judgment in this Court."

In February 2019, George filed a motion to vacate the parentage judgment in the trial court. George alleged that he is B.C.'s presumed father because she was born during his marriage to Patricia and that any challenge to his parentage is barred by the time limit in former RCW 26.26.530. George claimed that the State failed to name him as a potential father in the parentage suit and that the finding in the dissolution decree was insufficient as a matter of law to disestablish his parentage of B.C.

The trial court denied George's motion because "George . . . is not a party to the action[,] and parentage was established in the case by order of the court in September 2016."

This third appeal challenges the trial court's denial of his motion to vacate the 2016 order establishing Casey as B.C.'s father.

## ANALYSIS

A motion to vacate a judgment is governed by CR 60. George does not identify which provision of CR 60 would lead us to vacate the parentage judgment. But George raises the same arguments here as he raised in his first appeal.[6] First, he argues the parentage judgment should be vacated because he is B.C.'s presumed parent under law. Second, he argues the trial court had no authority in the dissolution proceeding to disestablish his parentage. Third, he argues the State was barred by the statute of limitations from filing the parentage action. Fourth, he argues under former RCW 26.26.510, the trial court could not issue an order establishing Casey's parentage because neither Chapman nor the child, B.C., was a party to the action. These arguments are all legal in nature so we presume George sought to vacate the judgment under CR 60(b)(5).[7] Although the decision to grant or deny a motion to vacate a judgment under CR 60(b) generally falls within the trial court's discretion, State v. Santos, 104 Wn.2d 142, 145, 702 P.2d 1179 (1985), we review de novo a trial court's denial of a CR 60(b)(5) motion

---

[6] The State requests this appeal be dismissed, arguing the record is insufficient for appellate review. While there are some deficiencies in the record and in the briefing, with the State supplementing the record, we conclude there is sufficient information to reach the merits of George's appeal.

[7] CR 60(b)(5) gives the court the authority to vacate a judgment if it is legally void.

based on a claim that the judgment is void, Ahten v. Barnes, 158 Wn. App. 343, 350, 242 P.3d 35 (2010).

George first argues the trial court erred in rejecting his motion to vacate the judgment because he was not a party to the State's parentage action. We agree. George argued below that the parentage order is void because he is B.C.'s presumed parent, his parentage had not been disestablished, and he should have been named a party to the parentage action under former RCW 26.26.510.[8] It was the State's purported failure to disestablish his parentage and to name him as a necessary party that formed the basis for his motion to vacate. Under these circumstances, George has standing to challenge the validity of the parentage order, and the trial court erred in basing its denial on his non-party status.

Furthermore, we agree with George's contention that the 2016 parentage judgment is invalid because he remains B.C.'s presumptive parent under the UPA. Former RCW 26.26.101(5) provided that the "parent-child relationship is established between a child and a man or woman by [a]n unrebutted presumption of the person's parentage of the child under RCW 26.26.116." Under former RCW 26.26.116(1)(a), a person is presumed to be the parent of a child if that person is married to the mother and the child is born during the marriage. Because George and Patricia were married when B.C. was born, George is B.C.'s presumptive father unless and until that presumption is properly rebutted.

---

[8] Former RCW 26.26.510(2) required joining the "person whose parentage of the child is to be adjudicated" to the proceeding to adjudicate parentage.

The State contends the 2011 dissolution decree rebutted the presumption of George's parentage. We disagree that the finding in the dissolution decree was legally sufficient to disestablish George's parentage. Former RCW 26.26.116(3) provided that the presumption of parentage "may be rebutted only by an adjudication under RCW 26.26.500 through 26.26.630." The dissolution petition was not an adjudication under the UPA.

Former RCW 26.26.630(3)[9] provided that a person could become an adjudicated parent[10] through a dissolution proceeding. See In re Parentage of K.R.P., 160 Wn. App. 215, 225, 247 P.3d 491 (2011) (presumed parent became adjudicated parent by virtue of dissolution proceeding ordering the presumed parent pay child support); In re Parentage of M.S., 128 Wn. App. 408, 413-14 & n.14, 115 P.3d 405 (2005) ("[U]nder RCW 26.26.630(3)(b), a man becomes an adjudicated father if he is involved in a marital dissolution proceeding and the court's final order provides that he must support the child."). But that statute does not permit the disestablishment of parentage through a dissolution proceeding unless a separate parentage action is filed and joined with the dissolution petition. See former RCW 26.26.630(3)(b) (providing means to adjudicate parentage "unless parentage is specifically disclaimed in the order"); former RCW 26.26.545 ("[A] proceeding to adjudicate parentage may be joined with a proceeding

---

[9] "In a proceeding to dissolve a marriage . . . , the court is deemed to have made an adjudication of the parentage of a child if the court acts under circumstances that satisfy the jurisdictional requirements of RCW 26.21A.100, and the final order [e]xpressly identifies a child as a 'child of the marriage,' [or] 'issue of the marriage,' . . . or similar words indicating that the spouses in the marriage . . . are the parents of the child; or [p]rovides for support of the child by one or both of the spouses or domestic partners unless parentage is specifically disclaimed in the order."

[10] An "adjudicated parent" is a "person who has been adjudicated by a court of competent jurisdiction to be the parent of a child." Former RCW 26.26.011(2).

for . . . dissolution of marriage."). Therefore, because the trial court in the dissolution proceeding had no authority to disestablish George's parentage, the 2011 dissolution decree finding purporting to rebut the presumption of his parentage had no legal effect.

Because the 2011 dissolution decree did not rebut the presumption of George's parentage, George remains B.C.'s presumptive parent, and the 2016 order establishing Casey as B.C.'s father is void. The trial court erred in denying George's motion to vacate the 2016 parentage order.

Reversed and remanded.

WE CONCUR:

_Andrus, J._

_Smith, J._

_Dwyer, J._