# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LISA EARL,<br><br>                      Appellant,<br><br>     v.<br><br>CITY OF TACOMA, a political subdivision of<br>Washington State,<br><br>                    Respondent. | No. 56160-3-II<br><br><br><br><br>UNPUBLISHED OPINION |

VELJACIC, J. — A Tacoma police officer shot and killed Lisa Earl's daughter, Jacqueline Salyers, in January 2016. Earl made a request under the Public Records Act (PRA), chapter 42.56 RCW, to the City of Tacoma for records related to her daughter's death. The City disclosed records to Earl on an installment basis and, after providing Earl with the requested documents, issued a letter closing the request.

In the course of separate litigation, the City produced a record that was not disclosed in response to Earl's PRA request. Almost three years after the City's closing letter, Earl filed this action contending that the City violated the PRA by failing to conduct an adequate search and by failing to disclose responsive records. She also asked the court to enjoin the Tacoma Police Department (TPD) from keeping certain records separate and apart from other police records. Earl and the City filed cross-motions for summary judgment. The trial court ruled that Earl's action was untimely and granted the City's motion for summary judgment. Because the trial court

dismissed Earl's PRA claims on statute of limitations grounds, it did not address her motion for partial summary judgment.

Earl appeals the trial court's order granting the City's motion for summary judgment dismissal of her claims. Earl argues that the trial court erred by dismissing her PRA claims because the discovery rule and equitable tolling applied to make her complaint timely. She also asks us to order the trial court to grant her motion for partial summary judgment and hold that the City violated the PRA. She also requests attorney fees and costs on appeal.

Because the discovery rule does not apply to PRA cases, and because Earl fails to meet her burden of proof for equitable tolling, we affirm the trial court's order dismissing Earl's PRA claims as time barred under RCW 42.56.550(6). We also deny Earl's request for attorney fees and costs on appeal because she is not the prevailing party.

FACTS

I.    BACKGROUND

On January 28, 2016, Tacoma police officers Scott Campbell and Aaron Joseph drove to the 3300 block of Sawyer Street in Tacoma because they received a tip concerning the location of Kenneth Wright. The informant also provided information on a vehicle that Wright was recently seen driving. The TPD was on a mission to locate Wright because he had a warrant out for his arrest for armed robbery, among other crimes.

The officers arrived at the Sawyer Street location at approximately 11:45 p.m. Once there, Campbell spotted a vehicle backed into a parking spot that matched the informant's tip. Campbell recognized Wright sitting inside the passenger side of the vehicle. Salyers was in the driver's seat.

Joseph stopped the patrol vehicle in front of the suspect vehicle. Both officers exited the patrol vehicle, drew their firearms, and moved towards the suspect vehicle. At some point, Salyers began to drive forward. Campbell stated that he was about 5-10 feet at a 45 degree angle from the front passenger side of the vehicle when it began to accelerate. Campbell then fired eight shots, killing Salyers.

After Campbell stopped shooting, the vehicle rolled to a stop. Wright exited the vehicle with a rifle and ran down an alley. The officers did not chase Wright because they were unsure if he took up a defensive position in the dark alley or if he continued fleeing the scene.

Shortly after midnight, the TPD called out its Special Weapons and Tactics (SWAT) team to search for Wright. Jack Nasworthy was one of the responding SWAT officers. Nasworthy's role that night was to serve on the Command Post Element, which provides intelligence to the other SWAT elements through radio and coordinates tactical operations.

Nasworthy learned that there was a pole camera installed at the 3300 block of Sawyer Street. He believed that the camera captured footage which could narrow down Wright's possible location. The Sawyer Street camera was installed on January 22 and appeared to be focused on the area where the shooting occurred. The camera is a motion activated device meaning that it will only record footage if some movement activates the recording function.

Nasworthy attempted to log into the View Commander system[1] to access the Sawyer Street pole camera. He was unable to log in with his Criminal Investigations Division (CID) password because the camera was a Special Investigations Division (SID) asset. He called Scott Shafner, who was also a responding SWAT officer that night, and obtained his login information. Because

---

[1] "View Commander" is the name of the software program that houses all camera footage, live or recorded, and controls access to any camera that was set up under its program.

Shafner was an administrator on the View Commander system, Nasworthy was able to gain access to the Sawyer Street camera. Only administrators have editing privileges for the View Commander system.

Once he had accessed View Commander, Nasworthy stated that he checked the live feed for the Sawyer Street camera. He stated that he was unable to see anything because of the darkness. Nasworthy then checked for a recording of the shooting, but stated that he could not find any recorded information.

Wright ended up escaping that night. He was arrested approximately two weeks later without incident.

II.    EARL'S 2016 PRA REQUEST

The following morning, on January 29, Earl learned that a Tacoma police officer had shot and killed her daughter, Salyers. Earl wanted to know why the officer killed her daughter.

On June 30, Earl, through counsel, submitted a comprehensive, 16 item public records request to the City. Relevant here, Earl requested a copy of the following records:

> 1. All documents related to the shooting death of Jacqueline Salyers on January 27-28, 2016, including but not limited to the complete investigative report, and any and all follow-up reports, investigation materials, witness statements and officer's notes, photographs, DXF/CAD files, measurements, physical evidence, video/audio, dash cams, and the involved vehicle including any data downloads from that vehicle;

> 2. All documents (including photographs and video) related to the surveillance camera and the location of that surveillance camera identified as the Axis 214 camera installed in the covert box that was deployed at 3314 S. Sawyer.

Clerk's Papers (CP) at 255.

4

The City produced responsive records in two installments. The first installment was disclosed on October 7 and the second installment was disclosed on November 8. The records produced included reports written by Tacoma police officers and other reports that referred to the SWAT team's activities on the night Salyers was killed.

On November 23, the City closed Earl's request. The closing letter stated, "After searching further, it was determined there are no other records responsive to your request. As such, your request . . . is now considered closed. If you believe there are other records responsive, or this does not meet the scope of your request, please contact me at your earliest convenience." CP at 556. Earl did not respond to this letter.

III.     THE COMMAND POST LOG

On April 28, 2017, Earl, Salyers' minor children, and the Estate of Jacqueline Salyers (hereinafter collectively referenced as "Earl") filed a complaint in the Western District of Washington against Campbell and the City based on the shooting death of Salyers. Specifically, Earl asserted claims of excessive force, a violation of substantive due process rights, and wrongful death.

In that case, Earl filed a motion to reopen discovery because she claimed that Nasworthy deleted a video recording of the shooting. On September 25, 2018, the City filed an affidavit from Nasworthy in response to Earl's motion. Nasworthy declared that he did not delete any video footage from the pole camera on Sawyer Street. As a member of the Command Post Element, Nasworthy stated that his responsibility on the night of the shooting was to prepare the "Command Post Log," which was attached to his affidavit. CP at 224.

The Command Post Log is a three-page document that compiles information pertaining to the SWAT team's movements. Relevant here, the first few lines of this document read,

5

CASE # – 1602801965
DATE – 1/29/2016
LOCATION – 3300 Sawyer/3326 Sawyer susp address
SUBJECT – Kenneth Wright
SITUATION – Officer Involved Shooting

CP at 227. Sergeant Peter Habib, a responding SWAT officer on the night of the shooting, stated that the phrase "officer-involved shooting" means that "some officer discharged their firearm." CP at 659. The TPD case number that appears on the Command Post Log (No. 1602801965) is the same case number that appears on the police reports furnished to Earl in response to her 2016 PRA request. This was the only information in that three-page document that related to the shooting of Salyers.

However, the Command Post Log was not disclosed to Earl in her 2016 PRA request. Earl declared that "[she] believed the City when it said there were no other records responsive to my request." CP at 626. Earl also stated that "[t]he first time [she] ever knew that such a document existed was sometime after September 25, 2018." CP at 626. Earl further stated that "[i]f I had known that there was a SWAT Team Command Post Log that documented the activities of the SWAT Team on January 29, 2016, I would have objected to Tacoma's failure to give me a copy of it pursuant to my [PRA] request." CP at 626. Thus, the City's failure to disclose the Command Post Log in response to Earl's 2016 PRA request is at issue in this case.

IV.     PROCEDURAL HISTORY

On August 29, 2019, Earl filed a complaint in Pierce County Superior Court alleging that the City violated the PRA. Earl filed a motion for partial summary judgment arguing that the City violated the PRA (1) by failing to disclose the Command Post Log and (2) by failing to perform an adequate search for responsive records. She also asked the court to enjoin the City from keeping SWAT team records separate and apart from other TPD records.

6

The City also filed a motion for summary judgment, arguing that Earl's complaint was barred by the PRA's one year statute of limitations. In response, Earl argued that the statute of limitations should be equitably tolled because the City falsely assured her that it possessed no other responsive records in its closing letter. Earl also contended that the discovery rule postponed the date that her PRA cause of action began to accrue to September 25, 2018, thus making her complaint timely.

The trial court agreed with the City and ruled that Earl's action was barred by the PRA's one year statute of limitations. It did not address the merits of Earl's motion for partial summary judgment. The court then issued an order granting the City's motion for summary judgment, denying Earl's motion for partial summary judgment, and dismissed Earl's PRA claims and request for injunctive relief.

Earl appeals the order granting the City's motion for summary judgment dismissal of her claims. She also argues that we should hold that the City violated the PRA, effectively asking us to make an initial ruling on her motion for partial summary judgment.

## ANALYSIS[2]

Earl and the amici argue that the trial court erred by granting the City's motion for summary judgment because her action was timely filed. We disagree and hold that Earl's action was time barred.

---

[2] Amicus ACLU appears to advance policy arguments, based on studies demonstrating the historical and enduring systemic violence perpetrated against Native people by government officials, to support its contention that the discovery rule and equitable tolling should apply to PRA cases. While we recognize and are sensitive to this important social justice issue, such "[p]ublic policy arguments 'are more properly addressed to the Legislature, not to the courts.'" *McCaulley v. Dep't of Labor & Indus.*, 5 Wn. App. 2d 304, 316, 424 P.3d 221 (2018) (quoting *Blomster v. Nordstrom, Inc.*, 103 Wn. App. 252, 258, 11 P.3d 883 (2000)).

I.     STANDARD OF REVIEW

"The PRA is a 'strongly worded mandate for broad disclosure of public records.'" *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 431, 327 P.3d 600 (2013) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)).  It requires governmental agencies to "'make available for public inspection and copying all public records, unless the record falls within the specific exemptions of [the PRA].'" *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 535, 199 P.3d 393 (2009) (quoting RCW 42.56.070(1)).

"The PRA's primary purpose is to foster governmental transparency and accountability by making public records available to Washington's citizens." *John Doe A v. Wash. State Patrol*, 185 Wn.2d 363, 371, 374 P.3d 63 (2016).  The PRA mandates that its provisions "shall be liberally construed" to promote full access to public records.  RCW 42.56.030; *John Doe A*, 185 Wn.2d at 371.  We review challenges to agency actions under the PRA de novo.  RCW 42.56.550(3).

"Grants of summary judgment are reviewed de novo, and we engage in the same inquiry as the trial court." *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 715, 261 P.3d 119 (2011).  Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  CR 56(c).  "We review all evidence and reasonable inferences in the light most favorable to the nonmoving party and consider only the evidence that was brought to the trial court's attention." *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 79, 493 P.3d 1245 (2021).

II.     STATUTE OF LIMITATIONS

Whether a claim is time barred is a legal question we review de novo. *Kelly v. Allainz Life Ins. Co. of N. Am.*, 178 Wn. App. 395, 399, 314 P.3d 755 (2013).

The PRA establishes a one year statute of limitations for judicial review of agency actions. RCW 42.56.550(6) provides that "[a]ctions under [the PRA] must be filed within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis." "Our Supreme Court has held that this section reveals the legislature's intent to impose a one year statute of limitations 'beginning on an agency's final, definitive response to a public records request.'" *Dotson v. Pierce County*, 13 Wn. App. 2d 455, 470, 464 P.3d 563 (quoting *Belenski v. Jefferson County*, 186 Wn.2d 452, 460, 378 P.3d 176 (2016)), *review denied*, 196 Wn.2d 1018 (2020). This final response includes a letter sent to the requester notifying him or her that the request has been closed. *Dotson*, 13 Wn. App. 2d at 471.

Amicus ACLU argues that the trial court erred by concluding that the statute of limitations began to run on the date of the City's closing letter, rather than the date the City disclosed the Command Post Log in Earl's federal lawsuit. Specifically, the ALCU contends that the City's disclosure of that document "equates to the agency's last production of a record on a partial or installment basis," thus making Earl's complaint timely. Br. of Amicus Curiae (ACLU et al) at 16. However, we rejected a similar argument in *Dotson*, 13 Wn. App. 2d at 470-72. So too here, this argument fails.

Here, the City sent a letter closing Earl's request on November 23, 2016. This action comprised a final, definitive response to Earl's request, and started the PRA's one year statute of limitations. Earl did not file her PRA complaint until August 29, 2019. Therefore, unless Earl can

show that the discovery rule applies to PRA actions or that equitable tolling applies to her case, her complaint was untimely.

III.   DISCOVERY RULE

Earl and the amici argue that the statute of limitations began to run on September 25, 2018, when Earl discovered that the City had not disclosed the Command Post Log, which they contend was a responsive record to her PRA request. We reject Earl's attempt to apply the discovery rule to her PRA action.

A.   Legal principles

"Under the discovery rule, a cause of action accrues when the plaintiff knew or should have known the essential elements of the cause of action." *Allen v. State*, 118 Wn.2d 753, 757-58, 826 P.2d 200 (1992) (footnote omitted). "[T]he discovery rule will postpone the running of a statute of limitations only until the time when a plaintiff, through the exercise of due diligence, should have discovered the basis for the cause of action. A cause of action will accrue on that date even if *actual* discovery did not occur until later." *Id.* at 758.

"The discovery rule does not alter the statute of limitations. It is . . . a rule for determining when a cause of action accrues and [when] the statute of limitations commences to run." *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 587, 146 P.3d 423 (2006). "[T]he discovery rule is not available where the legislature has clearly delineated the event that starts the running of the limitations period, for there is then no 'accrual' to interpret." *In re Parentage of C.S.*, 134 Wn. App. 141, 147, 139 P.3d 366 (2006); *see Douchette v. Bethel Sch. Dist. No. 403*, 117 Wn.2d 805, 813, 818 P.2d 1362 (1991) ("Where the statute does not specify a time at which the cause of action accrues, the general rule of law is that an action accrues when the plaintiff discovers or reasonably should discover all the essential elements of a cause of action.").

10

Recently, we have rejected the application of the discovery rule in PRA actions reasoning in part that, "the PRA statute of limitations contains triggering events that enable a requester to know that a cause of action has accrued, and the legislature enacted no discovery rule exception." *Dotson*, 13 Wn. App. 2d at 472.

### B. The Discovery Rule Does Not Apply to PRA Actions

Following *Dotson*, we hold that the discovery rule does not apply to PRA actions because the legislature has clearly specified the event that starts the running of the limitations period in RCW 42.56.550(6), which is the agency's final, definitive response to a public records request. *Belenski*, 186 Wn.2d at 460; *C.S.*, 134 Wn. App. at 147. Therefore, the trial court did not err by declining to apply the discovery rule to Earl's cause of action.

Earl advances several arguments contending that *Dotson* incorrectly held that the discovery rule does not apply to PRA actions and that it should be overruled. We disagree with each contention.

First, Earl contends that *Dotson* incorrectly interpreted the Supreme Court's decision in *Douchette* to stand for the proposition that the discovery rule only applied to negligence actions. But *Dotson* stated no such thing. Rather, *Dotson* held in part that the discovery rule did not apply to PRA actions because RCW 42.56.550(6) specifies the time at which a requestor's cause of action accrues, which is a correct statement of the law. 13 Wn. App. 2d at 472. Accordingly, this argument fails.

Second, Earl argues that *Dotson* confuses knowledge of the law (the accrual date for a PRA cause of action) and knowledge of the facts (the fact that the government failed to disclose responsive records). Because knowledge of the law is irrelevant to the application of the discovery

11

rule, Earl contends that *Dotson* impermissibly conflicts with *Douchette*, and therefore, should be overruled. We disagree.

Earl points to the following language in the *Dotson* opinion:

The discovery rule generally applies in cases where "the statute does not specify a time at which the cause of action accrues." [*Douchette*, 117 Wn.2d at 813]. However, the PRA statute of limitations contains triggering events that enable a requester to know that a cause of action has accrued, and the legislature enacted no discovery rule exception. And Dotson cites no authority for applying the discovery rule to PRA actions that, as interpreted in *Belenski*, arise under a statute that specifies the statute of limitations begins to run at the time of the agency's "final, definitive response." 186 Wn.2d at 461 []. We hold that the statute of limitations began to run in June 2016.

13 Wn. App. 2d at 472 (footnote omitted).

The language in *Douchette* that Earl alleges is conflicting states, "[t]he discovery rule does not require knowledge of the existence of a legal cause of action itself, but merely knowledge of the facts necessary to establish the elements of the claim." 117 Wn.2d at 814. There, the Supreme Court explained this to convey the well-established principle that the limitations period will begin to run under the discovery rule when a plaintiff should have discovered the salient facts of their cause of action; not when the plaintiff has actual knowledge of a legal claim. *Id*. at 814-15. Earl's reliance on this proposition fails because, while true, it has no bearing on the applicability of the discovery rule to a *statute* that specifies an accrual date for a plaintiff's cause of action.

Contrary to Earl's assertion, both *Dotson* and *Douchette* harmoniously recognize that the discovery rule generally applies in cases where the applicable statute does not specify a time at which the cause of action accrues. 117 Wn.2d at 813; 13 Wn. App. 2d at 472. Again, this is a correct statement of the law. Because these decisions are consistent with each other, we decline to overrule *Dotson* on this ground.

Third, Earl contends that *Dotson* declined to apply the discovery rule only because the appellant in that case failed to cite legal authority to support her contention that the rule applied to PRA cases. We disagree.

Contrary to Earl's contention, *Dotson* did not rest its holding on RAP 10.3. The *Dotson* court declined to apply the discovery rule to PRA cases (1) because RCW 42.56.550(6) contained triggering events that enable a requester to know that a cause of action has accrued and (2) because the appellant cited no authority for applying the discovery rule to PRA cases. 13 Wn. App. 2d at 472. Because *Dotson* did not decline to apply the discovery rule to PRA cases solely based on the appellant's failure to cite legal authority, we reject Earl's argument.

Next, Earl relies on four cases to support her contention that the discovery rule applies to PRA cases. Specifically, Earl cites to *Reed v. City of Asotin*, 917 F. Supp. 2d 1156 (E.D. Wash. 2013); *Anthony v. Mason County*, 2014 WL 1413421 (W.D. Wash. 2014); *Mahmoud v. Snohomish County*, No. 70757-4-I (Wash. Ct. App. Oct. 27. 2014) (unpublished), https://www.courts.wa.gov/opinions/pdf/707574.pdf; and *Canha v. Dep't of Corr.*, No. 73965-4-I (Wash. Ct. App. Apr. 25, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/739654.pdf. However, these cases are inapposite because none of them recognize that the discovery rule is inapplicable to a limitations statute where the legislature specifies an accrual event for a cause of action. *C.S.*, 134 Wn. App. at 147. Accordingly, Earl's reliance on these cases fails.

We recognize that our refusal to apply the discovery rule in the context of the PRA actions will preclude claims where, as here, the requestor did not know certain records existed until years after the agency's final closing letter. However, there has been a trend toward making violations and penalties less onerous on agencies. *See* Wash. State Bar Ass'n, PUBLIC RECORDS ACT

DESKBOOK: WASHINGTON'S PUBLIC DISCLOSURE AND OPEN PUBLIC MEETINGS LAWS § 18-4. For example, the legislature has amended the PRA to eliminate the $5.00 minimum per day penalty, allowing courts to conclude no penalty, or a small penalty of less than $5.00 per day is warranted, depending on the facts. LAWS OF 2011, ch. 273 § 1(4). And the legislature has made the specific policy decision to decrease the applicable limitations period for PRA claims. LAWS OF 1973, ch. 1 § 41 (original initiative establishing six year statute of limitations); LAWS OF 2005, ch. 483 § 5 (establishing current one year statute of limitations). We are not in a position to override the legislature's stated intent.[3]

Therefore, we follow *Dotson*'s holding that the discovery rule does not apply to PRA actions because the legislature has clearly specified the event that triggers the running of the limitations period: the agency's final, definitive response to a public records request. *Belenski*, 186 Wn.2d at 460; *C.S.*, 134 Wn. App. at 147. The statute of limitations for Earl's PRA claims began to run on November 23, 2016, which was date the City closed Earl's request. Earl filed her complaint on August 29, 2019. Accordingly, Earl's complaint is barred by the PRA's one year statute of limitations unless she can show that equitable tolling applies.

---

[3] If the legislature disagrees and instead believes that the discovery rule should apply, it is free to legislate accordingly.

14

IV.     EQUITABLE TOLLING

Earl and the amici argue that the statute of limitations for her PRA claims should be equitably tolled.[4]  We disagree.

A.     Legal Principles

"Although we give deference to the trial court's factual determinations, we review a decision of whether to grant equitable relief de novo."  *Trotzer v. Vig*, 149 Wn. App. 594, 607, 203 P.3d 1056 (2009).

"Equitable tolling permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed."  *Price v. Gonzalez*, 4 Wn. App. 2d 67, 75, 419 P.3d 858 (2018).  "The predicates for equitable tolling are bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff."  *Millay v. Cam*, 135 Wn.2d 193, 206, 955 P.2d 791 (1998).  Washington courts have applied the false assurances prong in narrow circumstances and have appeared to require a showing that the defendant "made a deliberate attempt to mislead."  *Price*, 4 Wn. App. 2d at 76.  Furthermore, "[i]n Washington equitable tolling is appropriate when consistent with both the purpose of the statute providing the cause of action and the purpose of the statute of limitations."  *Millay*, 135 Wn.2d at 206.

"Courts typically permit equitable tolling to occur only sparingly, and should not extend it to a garden variety claim of excusable neglect."  *Price*, 4 Wn. App. 2d at 76.  "The party asserting

---

[4] The ACLU also argues that the doctrine of equitable estoppel applies to toll Earl's PRA claims. But equitable estoppel is not the appropriate test for tolling the statute of limitations. Rather, equitable estoppel works to prohibit a defendant from raising a statute of limitations defense when they made representations or promises to perform which lulled the plaintiff into delaying timely action. *Peterson v. Groves*, 111 Wn. App. 306, 310-11, 44 P.3d 894 (2002). Here, Earl does not dispute that the City can raise the defense; rather, she contends the limitations period was tolled. Thus, this argument fails.

that equitable tolling should apply bears the burden of proof." *Nickum v. City of Bainbridge Island*, 153 Wn. App. 366, 379, 223 P.3d 1172 (2009).

B.    Equitable Tolling Does Not Apply Here

Earl does not allege bad faith or deception. Instead, Earl and the amici argue that the first element of equitable tolling is met because the City made a false assurance that it possessed no other responsive records to her request in its closing letter. We disagree with the application of equitable tolling here because Earl fails to meet her burden of proof.

Here, the City closed Earl's PRA request on November 23, 2016, stating "[a]fter searching further, it was determined there are no other records responsive to your request. As such, your request . . . is now considered closed. If you believe there are other records responsive, or this does not meet the scope of your request, please contact me at your earliest convenience." CP at 556. But on September 25, 2018, the City disclosed the Command Post Log in the course of separate litigation.

Even assuming, without deciding, that the Command Post Log was responsive to her request, Earl presents no evidence to suggest that the City made deliberately false, misleading assurances which caused the one year limitations period to lapse. In her reply brief, Earl appears to argue that it is irrelevant as to whether the City's closing letter was "*deliberately* false." Reply Br. of Appellant at 13. But, as explained above, Washington courts have applied the false assurances prong in narrow circumstances and have appeared to require a showing of the defendant's deliberate attempt to mislead the plaintiff. *Price*, 4 Wn. App. 2d at 76. Therefore, the response *may* have turned out to be objectively false, but given that there is no evidence the City knew it was false and deliberately mislead Earl when it made the statement, the closing letter was not on its own a "false assurance" for the purposes of equitable tolling.

16

Such a showing was made by the requestor in *Belenski*. In that case, Belenski sent the County a PRA request asking to inspect the Internet Access Logs (IALs) from February 1, 2010 to September 27, 2010. *Belenski*, 186 Wn.2d at 455. On October 5, 2010, Belenski received a response stating that "the County has no responsive records." *Id*. Belenski explained that he was confused by the County's response because he had requested and received IAL data from the County in the past. *Id*. Eventually, Belenski discovered (through a separate public records response) e-mails between county employees sent shortly after his request admitting that the IALs existed during the relevant time period of Belenski's PRA request, but suggesting the County need not provide them because they are not "natively viewable" and would need to be "pulled out of a database and generated in a human readable format." *Id*. at 455-56. Belenski then filed a PRA complaint on November 19, 2012, which was well past the one year statute of limitations. *Id*. at 456. Because there were remaining factual issues concerning Belenski's diligence in pursuing his PRA claims, the Supreme Court remanded to the trial court to determine whether the doctrine of equitable tolling applied to toll the statute of limitations in that case. *Id*. at 461-62.

Requiring a PRA requestor to present evidence of an agency's deliberately false, misleading assurances will guarantee that the equitable tolling doctrine would be used "sparingly." *Price*, 4 Wn. App. 2d at 76. To hold otherwise would mean the statute of limitations would be tolled in every case where a requestor later obtains copies of records the agency claimed it did not

possess. That would not be sparing use of the doctrine. Therefore, the fact that Earl later received an alleged responsive record is not, by itself, sufficient to toll the one year statute of limitations.[5]

Earl contends that her case is akin to *Thompson v. Wilson*, 142 Wn. App. 803, 175 P.3d 1149 (2008), to support her argument that equitable tolling should apply here. We disagree.

In *Thompson*, the plaintiff repeatedly tried to meet with the defendant (the county coroner) to discuss the cause of her daughter's death, but when he finally agreed to meet with her, he misled her and only then did she seek judicial review. *Id.* at 814. The plaintiff asserted that defendant's actions caused the limitation period to lapse and the defendant "[did] not dispute these assertions of deception and misleading assurances." *Id.* Accordingly, we held that the limitations period was equitably tolled and commenced upon the defendant's good faith compliance with the statute at issue, which required the coroner to meet with the deceased's family upon request. *Id.* at 814-15.

Here, unlike *Thompson*, Earl presents no evidence which, when viewed in the light most favorable to her, would lead a reasonable trier of fact to conclude that the City deliberately made false, misleading assurances to her, thereby causing the limitations period to lapse. Therefore, Earl's reliance on *Thompson* fails.

Courts should apply the equitable tolling doctrine sparingly. Earl has the burden to show that equitable tolling applies. Earl fails to meet her burden of proof because, even considering the evidence in the light most favorable to her, she fails to show any evidence that the City made deliberately false, misleading assurances when it closed her PRA request without providing the

---

[5] This reasoning is consistent with Division One's unpublished decision in *Strickland v. Pierce County*, No. 75203-1-I (Wash. Ct. App. Jan. 29, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/752031.pdf. There, Division One also held that "[w]hen a requester obtains copies of records that the agency previously claimed it did not possess, that circumstance, without more, is not sufficient to toll the running of the statute of limitations." *Strickland*, slip op. at 12.

one omitted record. Accordingly, we conclude that the trial court did not err by granting summary judgment in this case.

V.     ATTORNEY FEES

Earl requests attorney fees and costs on appeal under RCW 42.56.550(4). We deny her request because Earl is not the prevailing party on appeal. RCW 42.56.550(4).

CONCLUSION

We affirm the trial court's order which granted the City's motion for summary judgment, denied Earl's motion for partial summary judgment, and dismissed Earl's PRA claims. We deny Earl's request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Maxa, J.

_____
Glasgow, C.J.

19